JAMES WUJCIK *et al.*, Plaintiffs-Appellants, v. GALLAGHER AND HENRY CONTRACTORS, d/b/a Orchard Hill Building Company, *et al.*, Defendants-Appellees.

Second District   No. 2—91—1143

Opinion filed July 9, 1992.

Bruce M. Bozich and Mark G. Patricoski, both of Law Offices of Bruce M. Bozich, of Palos Heights, for appellants.

Gary L. Taylor, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellees.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Plaintiffs, James and Beverly Wujcik, appeal after the trial judge, in a bench trial, granted a motion for judgment at the close of plaintiffs' case for defendants, Gallagher & Henry Contractors, doing business as Orchard Hill Building Company, and Robert E. Gallagher (Orchard Hill). The Wujciks were seeking monetary damages for the loss of lateral and subjacent support due to Orchard Hill's excavation of adjoining property. The sole issue presented by the Wujciks is whether the measure of damages should be the replacement cost for the trees lost from lack of support, instead of the diminution in value of the property. We reverse and remand.

The Wujciks own a five-acre tract of residential real estate in Downers Grove, Illinois. They have lived there for over 18 years. Sometime in the summer of 1986, Orchard Hill began excavating the undeveloped land west of the Wujciks' property. After the excavation began, the Wujciks noticed that water would accumulate on the west edge of their property, which is lined with trees. Both James and Beverly Wujcik testified that water never accumulated in that area before the excavation project. Beverly further testified that the water would reach the depth of one to two feet.

James testified as to the topography of their property. At the north or front end of the property, the land is approximately 10 feet higher than at the south or back end of the lot. The slope is gradually downward from north to south. The western boundary of the property is lined with approximately 100 tall, mature trees. From the middle of the tree line to the south end of the tree line, the trees sit in a trench which existed even before the excavation.

When the Wujciks built their home on the lot, the adjoining lot to the west was a vacant farm. The elevation of the farm adjacent to the north portion of the Wujcik property was very similar, while at the south end the Wujcik property was higher than the farm. James claimed that Orchard Hill took 15 to 20 feet of soil from the north end and placed it on the south end, elevating part of the south end three to four feet higher than the Wujcik property. The excavation occurred within three feet of the property line and as far away as nine feet from the property line.

In the area of the excavation, the Wujciks noticed that some trees were losing leaves. Eventually, four or five trees fell from loss of soil around the roots. This occurred about two years after the project began. Also, at the tree line in the southwestern portion of the property, water accumulated in the trench in which the trees sat and caused some trees to die from flooding.

The Wujciks relied on the testimony of two expert witnesses at trial. Michael Hughes, a civil engineer specializing in storm drainage, testified that a topographical survey was done on the Wujcik property to determine drainage patterns. The survey showed that the Wujcik property has a depression area in the middle of the back portion of the lot which gathers water flowing from the north, south and east. The drainage pattern of the accumulated water is westward toward the newly developed area, referred to as the Peter's Court area. Hughes opined that field tiles existed which carried water from the depression area through what is now the cul-de-sac on Peter's Court. Hughes' investigation also revealed that Orchard Hill had elevated the property south of Peter's Court up to eight feet. Hughes opined that this change in elevation "significantly reduced" the southwesterly flow of water on the Wujcik property.

Hughes did acknowledge that Orchard Hill made some accommodations for drainage by constructing a storm sewer and extending the trench that runs along the Wujcik property line. However, the drainage capacity was still less than the natural drainage pattern that existed before the excavation. Hughes stated that the Wujciks' drainage problem could be solved if the drainage tiles were reconnected to another subsurface system, the likeliest candidate being the new development's sewer system.

On cross-examination, Hughes admitted that his crew did not dig down to the drain tile to see at what point it had been disturbed. Hughes also stated that it was possible that tree roots from the Wujciks' trees might be interfering with the tiles.

Carl Quanstrom, the owner of Monee Nursery, testified that he examined the tree line on the western boundary of the Wujcik property. The average height of the trees was 35 to 45 feet, with trunk diameters ranging from 2 to 22 inches. Quanstrom observed about 10 dead trees in the southern portion of the tree line, which were lying in water and uprooted. He opined that the trees died from excess water and/or the compaction of roots. Also, some trees may have fallen because of soil erosion. The dead trees consisted of black locust, maple, poplar, ash, and osage orange.

Quanstrom then began testifying as to the extent of the monetary damages suffered by the Wujciks. Orchard Hill's attorney objected as this testimony was beyond that disclosed to the defendant pursuant to Supreme Court Rule 220 (134 Ill. 2d R. 220). The trial court allowed the testimony as an offer of proof. Quanstrom stated that the cost to remove the dead trees and to replace them with locust trees of similar height and diameter was $9,000. The locust was being used because it is a fast-growing tree. After this testimony, the trial court revised its ruling and allowed the testimony as substantive evidence.

After Quanstrom's testimony, the plaintiffs concluded their case. Orchard Hill made a motion for judgment pursuant to section 2—1110 of the Civil Practice Law (Ill. Rev. Stat. 1989, ch. 110, par. 2—1110), arguing that there was no proof that Orchard Hill had done anything to injure the Wujciks. Orchard Hill also argued that the Wujciks failed to prove damages with testimony as to the replacement value of the trees. Orchard Hill claimed that the replacement cost is not the proper measure of damages in this situation. Orchard Hill concluded that because the Wujciks failed to show a diminution in their property value, they failed to prove the essential element of damages. The Wujciks countered by urging the court to adopt the replacement cost as the proper measure of damages.

The trial court defined its duty in a nonjury case when a motion for judgment is presented. Particularly, the trial court stated that the Wujciks had to prove that their drainage problems were the exclusive result of Orchard Hill's actions. On this point the court stated:

> "Under the standard required by the Code of Civil Procedure, the Court must examine the record to see [if] some evidence on this point [exists] or, if the Court finds there is sufficient evidence on this point to withstand the motion for [a] directed finding, the next step is for the Court to determine [from] the record to see [if] there is competent evidence of damage in the record, which would allow the case to stand in the event that the defendant put on no evidence. And that's really the crux of the problem and that's where counsels' arguments have brought us."

Implicitly, the trial court ruled that the Wujciks proved that Orchard Hill's actions caused the drainage problem. The trial court then focused on the element of damages. The leading second district case on monetary damages for the loss of trees is *First National Bank v. Amco Engineering Co.* (1975), 32 Ill. App. 3d 451, in which this court stated that the proper measure of damages was the diminution in value of the realty. Justice Moran, then an appellate court judge, fol-

lowed this rule with some reluctance. The trial court here also expressed reservations:

> "I share Justice Moran's feeling in this area, after reading *** the other cases in the area. I feel that the appropriate standard would be other than that expressed in the First National Bank versus Amco; but I am compelled to follow the case that is a law for this particular appellate district.
>
> * * *
>
> I hereby find the law in the Second District, in the State of Illinois, is as cited in the First National Bank versus Amco. When taking that to be the standard, I must find there is no competent evidence of damages in this case. Therefore, the requisite element of proof is missing and I am required to grant the motion. Motion for directed finding at the close of the plaintiffs' case is granted. And I think the record is pretty clear as to the basis."

The Wujciks filed a timely appeal after the order granting the motion for judgment was entered.

The Wujciks ask this court to abandon the "diminution approach" as the proper measure of damages here and adopt the "replacement cost approach." They cite cases from outside the second district in which the replacement cost was the measure of damages employed. (*Rodrian v. Seiber* (1990), 194 Ill. App. 3d 504; *Myers v. Arnold* (1980), 83 Ill. App. 3d 1; *Arras v. Columbia Quarry Co.* (1977), 52 Ill. App. 3d 560.) If the replacement cost was the proper measure of damages, the Wujciks claim that they have proven damages and the motion for judgment should be reversed.

Orchard Hill contends that the trial court did not err in applying the measure of damages pursuant to *Amco*. Orchard Hill claims that the proper measure of damages for loss of lateral and subjacent support is the diminution in the value of the realty.

■■ Orchard Hill also contends that Quanstrom's expert testimony should be stricken for failure to comply with Supreme Court Rule 220 (134 Ill. 2d R. 220) and that Orchard Hill had the right to remove roots from the Wujciks' trees that encroached on its property. These final two contentions are beyond the scope of responding to the Wujciks' contentions. "[A] court of review is confined to the issues raised by appellant and will not consider those urged by appellee except where they are related to appellant's issues." (*Cleys v. Village of Palatine* (1980), 89 Ill. App. 3d 630, 635.) Orchard Hill having failed to raise these issues in a cross-appeal, we find that they are not properly before this court.

Under section 2—1110 of the Civil Practice Law, in a bench trial, the defendant may move for a judgment in his or her favor at the close of the plaintiff's case. (Ill. Rev. Stat. 1989, ch. 110, par. 2— 1110.) The trial court applies a two-part analysis in ruling on the motion. First, the trial court determines whether the plaintiff has presented a *prima facie* case. If so, then the court must weigh the evidence, pass on the credibility of the witnesses, draw reasonable inferences and generally consider the weight and quality of the evidence. (*Dyduch v. Crystal Green Corp.* (1991), 221 Ill. App. 3d 474, 477.) The trial court's decision to grant a defendant's motion for judgment will not be reversed unless it is against the manifest weight of the evidence. *Dyduch,* 221 Ill. App. 3d at 477.

We agree with the Wujciks that the diminution in value is an inequitable measure of damages in this situation and adopt the replacement value as the proper measure of damages. We begin our analysis in support of this holding with the *Amco* case. There, Amco employed a tree cutter to remove some trees from its property. The tree cutter mistakenly cut some trees on another property owner's land. That owner, the First National Bank, brought suit to recover the value of the trees prior to their removal. (*Amco,* 32 Ill. App. 3d at 453.) This court ruled that the proper measure of damages for loss of trees is the depreciation of the value of the realty caused by the tree removal or the value of the trees in their severed condition. (*Amco,* 32 Ill. App. 3d at 454.) This court refused to deviate from the existing law of Illinois, stating:

"Other jurisdictions, in dispensing justice between the parties, allow the reasonable cost of replacing the trees or for the reasonable cost of restoring the property to approximate, as near as possible, its original condition. [Citation.] This, it would seem, is the more equitable rule, but Illinois law has not, to date, recognized such [a] rule." *Amco,* 32 Ill. App. 3d at 454.

Subsequently, the Illinois General Assembly apparently recognized the inequity of this rule and adopted the Wrongful Tree Cutting Act (Tree Act) (Ill. Rev. Stat. 1991, ch. 96½, par. 9400 *et seq.*). (*Aaron v. Hendrickson* (1991), 221 Ill. App. 3d 842, 854.) Section 4 of the Tree Act directs the court to assess damages by taking the average of three independent appraisals of stumpage value, meaning the value as a "standing tree" (see Ill. Rev. Stat. 1991, ch. 96½, par. 9401(a)), and awarding triple the average appraisal. (Ill. Rev. Stat. 1991, ch. 96½, par. 9404.) However, the Tree Act is inapplicable in our situation as Orchard Hill did not cut the Wujciks' trees.

Although the Tree Act is not applicable here, it shows the intent of the General Assembly to protect trees on private property through the mandatory issuance of treble damages for wrongfully cutting a tree. We believe that we are expounding on the spirit of the Tree Act with our decision. Our society has become more environmentally conscious, and the law should respond to these concerns by acknowledging environmental injuries and holding wrongdoers accountable for actual damages.

Further, cases from the other appellate districts support our decision. In *Myers v. Arnold* (1980), 83 Ill. App. 3d 1, the Appellate Court, Fourth District, allowed the plaintiffs to seek the cost to repair their property instead of the difference in value before and after the injury. The plaintiffs asked the defendant construction company to dump two truckloads of concrete on their property. Instead, the defendant dumped between 60 and 70 loads of concrete. (*Myers*, 83 Ill. App. 3d at 3-4.) The court first recognized the purpose of the tort law:

> "The law of torts attempts primarily to restore the injured party to as good a position as he held prior to the tort. [Citation.] In accomplishing that result, courts must be mindful of the fact that rules governing the proper measure of damages in a particular case are guides only and should not be applied in an arbitrary, formulaic, or inflexible manner, particularly where to do so would not do substantial justice." *Myers*, 83 Ill. App. 3d at 7.

The *Myers* court then distinguished the appropriate measure of damages when land is held for only financial interests versus land held for personal use:

> "Allowing a plaintiff to recover the lesser of the cost of repair or the diminution in market value may be appropriate where the interest which has been harmed is purely financial, as where the land was purchased as a business investment with an eye towards speculation or where it is held solely for the production of income. However, the same measure of damages may be painfully inadequate when the land is held for a personal use such as a family residence and the harm may be corrected with a reasonable expenditure even though the expenditure exceeds the amount the land has diminished in value. In the latter case, the full repair cost will come much closer to restoring what was actually lost and will not require the injured party to correct the harm with funds from his own pocket." *Myers*, 83 Ill. App. 3d at 7.

■ Although we are not advocating the commercial/residential dichotomy, we agree with the reasoning that the diminution in value may be an inadequate measure of damages when land is damaged, even with commercial property. Nowadays, many commercial buildings are purposely surrounded by an aesthetically pleasing natural environment. As such, the diminution in value may also be an inadequate measure of damages if commercial realty is damaged.

We recognize that some injuries to land may not be replaceable or repairable for a reasonable cost, that being a cost reasonably related to the overall value of the land. The Wujciks cite a case that is instructive on this point. In *Arras v. Columbia Quarry Co.* (1977), 52 Ill. App. 3d 560, the court distinguished permanent and nonpermanent injuries, allowing the replacement cost as the measure of damages when the injury is nonpermanent. (*Arras*, 52 Ill. App. 3d at 564-65.) The *Arras* court relied on the reasoning of this court in *Kremeyer v. Shumate* (1959), 20 Ill. App. 2d 542, in which we stated:

> "Where the thing which is destroyed or injured, though affixed to the realty, has a distinct value without reference to the real estate upon which it stands, the measure of recovery is for the value or depreciation of value of the thing destroyed or injured, and not for the difference of the value of the land before and after the destruction. Under some circumstances, the proper measure of damages may be the cost of restoration of the property to its condition before the injury occurred, as where the injury is susceptible to be repaired at moderate expense and the cost of restoration may be shown with reasonable certainty." (*Kremeyer*, 20 Ill. App. 2d at 546.)

Further, the *Arras* rationale has been applied by this court. See *Frisch Contracting Service Corp. v. Northern Illinois Gas Co.* (1981), 93 Ill. App. 3d 799, 806.

■ We find that the loss of trees here is the type of nonpermanent injury contemplated in *Arras*. Further, the injury can be repaired at moderate expense in relation to the value of the entire parcel, thus conforming with the rationale in *Kremeyer*. We hold that the Wujciks presented sufficient evidence of damages to their property to survive a motion for judgment.

We also mention two other cases that are factually related and are consistent with this holding. In *Rodrian v. Seiber* (1990), 194 Ill. App. 3d 504, the plaintiff owned land adjacent to the defendant. The defendant built a road along the property line and bulldozed across the corner of the plaintiff's property, destroying some trees. (*Rodrian*, 194 Ill. App. 3d at 506-07.) The Appellate Court, Fifth District,

upheld a jury award for $20,000 in actual damages even though the entire 15-acre tract was worth approximately $42,000, stating:

"To restore the damaged land to its original contours alone will cost some $18,000, to say nothing of 'replacing' all of the trees and vegetation. An award of $20,000 is not so unreasonable or so disproportionate to the value of the land in light of the harm done to justify reversal in this instance." *Rodrian,* 194 Ill. App. 3d at 509.

In *Pierce v. DeJong* (1973), 13 Ill. App. 3d 889, a second district case, the plaintiffs brought suit to recover for the neighbors' obstruction of the natural flow of surface water. This obstruction caused the plaintiffs' land to flood, destroying trees and shrubs on their property. (*Pierce,* 13 Ill. App. 3d at 890.) The trial court awarded, among other damages, $1,470 to replace the trees, shrubs and bushes damaged by the surface water. (*Pierce,* 13 Ill. App. 3d at 890.) Although this court found that the trial court erred in awarding certain damages to the plaintiffs, the award for the replacement cost of the vegetation was upheld. *Pierce,* 13 Ill. App. 3d at 892.

Orchard Hill argues that the measure of damages in loss of lateral support cases is the diminution in value, citing *Sperry v. Punke* (1973), 13 Ill. App. 3d 58.) However, a different measure of damages is suggested by the Adjacent Landowner Excavation Protection Act (Excavation Act) (Ill. Rev. Stat. 1991, ch. 111½, par. 3300 *et seq.*). Section 1(2) of the Excavation Act states:

"Any owner or possessor of land upon which an excavation is made, who does not comply with the provisions of subparagraph 1, when so required, is liable to the owner of adjacent property for *any damage to the land or to any buildings or other structure thereon arising from such excavation* ***." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 111½, par. 3301(2).

The Excavation Act does not mention using a diminution in value criterion, but only states that the wrongdoer is liable for the damage to the land, buildings or other structures. "The cost of repairs or restoration is frequently the proper measure of damages where the injuries are small and full repair or restoration can readily be made." (1 Am. Jur. 2d *Adjoining Landowners* §75 (1962).) Although we make no determination as to Orchard Hill's liability under the Excavation Act, its statement of damages, along with the other case law and secondary sources cited, lead us to conclude that the replacement cost is the proper measure of damages here.

The purpose of tort law is to place the injured party in the position he or she was in before the injury. The failure to recognize the

aesthetic and overall environmental value the trees had to the Wujciks is a failure to view the entire picture when assessing damages. Our decision is a recognition of the true value that natural, tangible property inherently possesses.

For the foregoing reasons, the order of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

McLAREN and DUNN, JJ., concur.