Second Division
August 29, 2006

Nos. 1-05-0067 & 1-05-0090 cons.

| | | |
|---|---|---|
| IN RE ESTATE OF THEODORE HOELLEN, a Disabled Person (Robert F. Harris, Cook County Public Guardian, as Guardian of the Estate and Person of Theodore Hoellen, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Petitioner-Appellee | ) ) | |
| v. | ) ) | No. 03 P 1918 |
| Donald L. Owsley, | ) ) | Honorable Mary Ellen Coghlan |
| Respondent-Appellant). | ) | Judge Presiding |

JUSTICE HALL delivered the opinion of the court:

In this consolidated appeal, respondent Donald L. Owsley appeals from two orders entered by the probate court relating to the estate of Theodore F. Hoellen.  The first order was entered in favor of the Public Guardian as guardian of the estate and person of Hoellen and against respondent for nominal damages in the amount of $1 and punitive damages in the amount of $50,000.  The second was a postjudgment order that, among other things, granted respondent a time extension within which to post an appeal bond covering the money damages portion of the first order.

The record shows that respondent, a Chicago police officer, first met Hoellen in the summer of 1999 when he responded to a 9-1-1 call from Hoellen's neighbor after Hoellen mistakenly entered the neighbor's home believing it was his home.  After the incident occurred, respondent began regularly visiting Hoellen at

his home. Hoellen's case was referred to the Public Guardian's office based on allegations that respondent was financially exploiting Hoellen, who lived alone and suffered from dementia. On October 8, 2003, the Public Guardian filed a five-count amended petition for issuance of a citation to recover assets alleging that over the years, respondent had engaged in a course of conduct designed to manipulate and financially exploit Hoellen, an 89-year-old physically and mentally impaired senior citizen who, it was argued, was unable to protect himself from such exploitation.

In the citation petition, the Public Guardian presented uncontroverted evidence that Hoellen was suffering from progressive dementia and was incapable of making informed, independent decisions regarding his personal finances at the time respondent caused him to: designate respondent as primary beneficiary of his Chicago Transit Authority (CTA) retirement death benefit, designate respondent as beneficiary of a $50,000 certificate of deposit held at Banco Popular, execute powers of attorney for health care and property naming respondent as agent; execute a trust document known as the "Theodore Hoellen Trust," under which respondent would receive Hoellen's entire trust estate, both real and personal, including all amounts added to the trust through Hoellen's last will and testament.

After conducting an evidentiary hearing and hearing argument on the citation petition, the probate court concluded that

1-05-0067 & 1-05-0090 (cons.)

respondent had used his position as a Chicago police officer to gain Hoellen's trust, exert undue influence over him, and then flagrantly and intentionally breach the fiduciary duty he owed him by virtue of a power of attorney. As a result, the probate court invalidated all of respondent's interests in Hoellen's estate: quitclaim deeds, CTA pension, certificate of deposit at Banco Popular, and the trust.

The probate court then awarded the Public Guardian nominal damages in the amount of $1 and punitive damages in the amount of $50,000. The probate court reasoned that punitive damages were warranted not only to punish respondent for violating his fiduciary duty to Hoellen but also to deter other individuals holding positions of public trust from financially exploiting vulnerable senior citizens.

On appeal, respondent contends that: (1) the probate court erred in denying his motion for substitution of judge as of right; (2) the probate court erred in denying his motion for substitution of judge for cause; (3) the probate court erred in not requiring the Public Guardian and certain Hoellen family members from responding to his request to admit facts and the genuineness of specified documents pursuant to Supreme Court Rule 216 (134 Ill. 2d R. 216); and (4) the probate court erred by entering a judgment against him for nominal and punitive damages. For the reasons that follow, we affirm.

1-05-0067 & 1-05-0090 (cons.)

ANALYSIS

As a preliminary matter we address the jurisdictional issue raised by the Public Guardian. The Public Guardian contends that respondent's notice of appeal only refers to the money damages portion of the probate court's order and therefore our jurisdiction is limited to that portion of the order and does not extend to the issues respondent now raises on appeal which would result in a new trial. The Public Guardian maintains that respondent's notice of appeal indicates he was only seeking reversal of the money damages portion of the order where the notice specifically refers to money damages but excludes any mention of Hoellen's estate assets. We disagree.

Supreme Court Rule 303(b)(2) (155 Ill. 2d R. 303(b)(2)), which governs the form and content of a notice of appeal, states in relevant part that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." Nowhere in the rule is there a requirement that an appellant specifically set forth in the notice of appeal each and every issue he wishes to appeal. On the contrary, our supreme court has determined that the briefs, and not the notice of appeal itself, specify the precise issues to be relied upon for reversal. *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433, 394 N.E.2d 380 (1979).

The purpose of a notice of appeal is to inform the party prevailing in the trial court that the unsuccessful party seeks

1-05-0067 & 1-05-0090 (cons.)

review of the judgment. *Burtell*, 76 Ill. 2d at 433. Notices of appeal are to be liberally construed. *In re Marriage of Goldberg*, 282 Ill. App. 3d 997, 1001, 668 N.E.2d 1104 (1996). As a result of this liberal construction, a notice of appeal will be deemed sufficient to confer appellate jurisdiction when, considered as a whole, it advises the successful party of the nature of the appeal by fairly and adequately setting out the judgment complained of and the relief sought. *Burtell*, 76 Ill. 2d at 433-34. Where the deficiency in a notice of appeal is one of form rather than substance and the appellee is not prejudiced, the absence of strict compliance with form is not fatal. *Burtell*, 76 Ill. 2d at 434.

Respondent's notice of appeal is sufficient under these principles. The notice states that respondent is appealing from "the order entered on December 28, 2004, which, *inter alia*, made final the 11-page judgment 'Order' entered against him by the Probate Division of the Circuit Court of Cook County on December 10, 2004. Said 11-page judgment Order entered a judgment against [respondent] for the sum of one dollar ($1.00) in compensatory damages and the sum of fifty thousand dollars ($50,000) in punitive damages." The notice goes on to state that respondent is "requesting that the circuit court be reversed and, if necessary, that the cause be remanded to that court with directives consistent with such disposition, and for any other and further relief to which she [*sic*] may be entitled."

˘5˘

1-05-0067 & 1-05-0090 (cons.)

Respondent's notice of appeal puts the Public Guardian on notice that he is appealing from the "11-page judgment 'Order'" entered against him by the probate court on December 10, 2004. The notice also sets forth the relief sought. Moreover, the Public Guardian does not claim any prejudice by the allegedly defective notice of appeal. In sum, this court's jurisdiction is not limited to the money damages portion of the trial court's order entered on December 10, 2004.

In another preliminary argument, the Public Guardian contends that respondent should be barred by the doctrine of judicial estoppel from requesting a complete reversal of the probate court's finding since he represented at the appeal bond hearing that he was only appealing the money damages award. Again, we must reject the Public Guardian's argument.

Judicial estoppel is an equitable common law doctrine designed to protect the integrity of the judicial process by preventing a party who has successfully maintained a position in one legal proceeding from asserting a contrary, inconsistent position in a subsequent proceeding in order to receive favorable judgments in each proceeding. *Ceres Terminals, Inc. v. Chicago City Bank & Trust Co.*, 259 Ill. App. 3d 836, 849-50, 635 N.E.2d 485 (1994). Illinois courts have set forth five elements as necessary to successfully assert judicial estoppel: (1) the party to be estopped must have taken two positions; (2) the positions must have been taken in judicial or quasi-judicial administrative

proceedings; (3) the positions must be given under oath; (4) the party must have successfully maintained the first position and received some benefit thereby; and (5) the two positions must be totally inconsistent. *Ceres Terminals, Inc.*, 259 Ill. App. 3d at 851.

Respondent maintains that judicial estoppel does not apply in this case because the position he took at the appeal bond hearing is not inconsistent with the position he now takes on appeal and therefore element five has not been established.  We agree.

Review of the record indicates that at the appeal bond hearing respondent sought a time extension within which to post an appeal bond covering the money damages portion of the order, not because he was only appealing from that portion of the order, but because he was seeking a stay of the money judgment, which was the only part of the order that required such surety.  The bond requirement applicable to money judgments is set forth in subparts (a) and (b) of Supreme Court Rule 305 (155 Ill. 2d Rs. 305(a), (b)).  Rule 305(a) automatically grants a stay of enforcement of money judgments if its procedures are followed, and Rule 305(b) allows a discretionary stay of enforcement of money judgments. See *Stacke v. Bates*, 138 Ill. 2d 295, 303, 562 N.E.2d 192 (1990).  Requiring an appellant to post an appeal bond gives a judgment creditor security during the pendency of the appeal by ensuring that if the judgment is affirmed, the judgment

1-05-0067 & 1-05-0090 (cons.)

creditor will be paid that which is owed. *Bricks, Inc. v. C & F Developers, Inc.*, 361 Ill. App. 3d 157, 162, 836 N.E.2d 743 (2005).  Judicial estoppel does not apply in this case.

Turning to the merits, respondent maintains that the probate court erred in denying his motions for substitution of judge as a matter of right and for cause.  We must reject respondent's contentions.

Pursuant to section 2-1001(a)(2) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1001(a)(2) (West 2000))[1], a civil litigant is entitled to one substitution of judge without

---

[1] Effective January 1993, the legislature amended section 2-1001 of the Code and added section 2-1001.5 to distinguish between "substitution of judge" and a "change of venue." Pub. Act 87-949, § 1, eff. January 1, 1993.  Case law published prior to January 1993 uses the terms "substitution of judge" and "change of venue" interchangeably. See *In re Marriage of Abma*, 308 Ill. App. 3d 605, 609, 720 N.E.2d 645 (1999).

1-05-0067 & 1-05-0090 (cons.)

cause as of right.  However, to prohibit litigants from "judge shopping" and seeking a substitution only after they have formed an opinion that the judge may be unfavorably disposed toward the merits of their case, a motion for substitution of judge as of right must be filed at the earliest practical moment before commencement of trial or hearing and before the trial judge considering the motion rules upon a substantial issue in the case. *In re Estate of Gay*, 353 Ill. App. 3d 341, 343, 818 N.E.2d 860 (2004).

A trial court's ruling on a discovery motion is considered "substantial" when it pertains to evidentiary matters and reveals the court's interpretation of a supreme court rule or the court's opinion as to the admissibility of extrinsic evidence. *Kochan v. Owens-Corning Fiberglass Corp.*, 242 Ill. App. 3d 781, 793, 610 N.E.2d 683 (1993); *Bonnie Owen Realty, Inc. v. Cincinnati Insurance Co.*, 283 Ill. App. 3d 812, 822, 670 N.E.2d 1182 (1996); *City of Granite City v. House of Prayers, Inc.*, 333 Ill. App. 3d 452, 461, 775 N.E.2d 643 (2002).  Review is *de novo,* since it is a question of law as to whether a trial court's ruling is substantial. *Partipilo v. Partipilo*, 331 Ill. App. 3d 394, 398, 770 N.E.2d 1136 (2002).

In addition, our courts have determined that even if the trial court did not rule on a substantial issue, a motion for substitution of judge as of right may still be denied, if before filing the motion, the moving party had an opportunity to test

1-05-0067 & 1-05-0090 (cons.)

the waters and form an opinion as to the court's disposition toward his claim. *Partipilo*, 331 Ill. App. 3d at 398-99; *In re Marriage of Abma*, 308 Ill. App. 3d 605, 611, 720 N.E.2d 645 (1999).

In this case, review of the record indicates that respondent's two motions for substitution of judge as of right were untimely and properly denied because they were made after the probate court ruled upon a substantial issue. The record also indicates that the motions were untimely and properly denied because they were made after respondent had an opportunity to test the waters and discern the trial court's disposition toward the case.

Respondent filed separate motions for substitution of judge as of right on July 16 and 22, 2003. The probate court denied both motions on the ground that they were untimely because they were filed after the court had ruled upon a substantial issue in the case on June 9, 2003, by granting the Public Guardian's emergency motion compelling respondent to produce "signed" copies of Hoellen's trust, powers of attorney, and last will.

Respondent contends that the probate court's ruling on the emergency motion was not substantive because the discovery issues involved were not substantive in nature and the amount of time the court spent on the motion was *de minimis.* We disagree.

The record indicates that prior to filing its emergency motion, the Public Guardian had received "unsigned" copies of the

requested documents, causing it to question their authenticity and validity such that the probate court ruled that respondent should be required to produce "signed" copies of the documents. This ruling was substantive in nature and entailed more than a mere administrative or ministerial decision. The specific dates on which the various documents were signed was relevant to tracing the nature and extent of the undue influence the probate court found respondent exercised over Hoellen. In addition, the documents contained information allowing the Public Guardian to go forward with the citation petition.

Moreover, the record indicates that even if the probate court's discovery ruling did not amount to a substantive ruling, respondent's two motions for substitution of judge as of right were still untimely because they were filed after respondent had an opportunity to test the waters and form an opinion as to the court's disposition toward his case. At the hearing on respondent's first motion for substitution of judge as of right held on July 16, 2003, counsel for respondent stated that he believed the court "showed a predisposition to ruling in favor of the Public Guardian's Office" when the court granted the Public Guardian's emergency motion compelling production of documents. Counsel's statement clearly shows he had formed an opinion as to the court's disposition toward his case.

Respondent alternatively argues that since the probate court granted the Public Guardian's emergency motion on June 9, 2003,

˘11˘

1-05-0067 & 1-05-0090 (cons.)

in the guardianship action, and the citation proceeding was not filed until June 24, 2003, it is impossible for the June 9 ruling to have been a substantive ruling within the citation proceeding because the proceeding did not exist at the time the ruling was made.  Citing no supporting case law, respondent contends that a citation proceeding under article XVI, section 16-1, of the Probate Act of 1975 (Probate Act) (755 ILCS 5/16-1 (West 2000)), is a new cause of action distinct from a guardianship-of-a-disabled-adult proceeding under article XIa of the Probate Act (755 ILCS 5/11a-1 *et seq*. (West 2004)).  He maintains that since service of process used to obtain personal jurisdiction over a respondent in a citation proceeding is the same as in any other civil action, and the parties have a right to a jury trial, a citation proceeding is a new cause of action distinct from a guardianship-of-a-disabled-adult proceeding, and therefore the probate court's June 9 ruling in the guardianship action could not have been a substantive ruling in this case.  We disagree.

In this case, even if the citation proceeding constituted a new cause of action distinct from the underlying guardianship proceeding, respondent's motions for substitution of judge as of right were still properly denied because they were filed after the probate court made a substantial ruling in the case and after respondent formed an opinion that the court may be unfavorably disposed toward the case.  To preclude litigants from "judge shopping," and in the interest of judicial economy, our courts

˘12˘

1-05-0067 & 1-05-0090 (cons.)

have determined that even if a particular proceeding constitutes a new cause of action, it will not be deemed a new cause for purposes of substitution of judge as of right if the trial court made a prior substantive ruling in the case or the moving party had an opportunity to test the waters and form an opinion as to the court's disposition toward his case. See *Niemerg v. Bonelli*, 344 Ill. App. 3d 459, 465, 800 N.E.2d 86 (2003) (finding that although a petition to vacate a judgment under section 2-1401 of the Code may be a "new action" for some purposes, such as pleading sufficiency and service of process, it is not a new case for purposes of substitution of judge under section 2-1001(a)(2) of the Code).

Respondent next contends that even if the probate court made a substantive ruling in this case, he was nevertheless entitled to a substitution of judge for cause. He maintains that the probate court erred in ruling that his July 22, 2003, motion for substitution of judge for cause was facially invalid, rather than first transferring the motion to another judge to conduct a hearing to determine whether cause existed. Again, we must reject respondent's contentions.

Section 2-1001(a)(3) of the Code provides for a substitution of judge for cause. 735 ILCS 5/2-1001(a)(3) (West 2000). Effective January 1993, this section of the Code was amended to provide that a trial judge facing a petition for substitution was required to refer the petition to a "judge other than the judge

1-05-0067 & 1-05-0090 (cons.)

named in the petition." 735 ILCS 5/2-1001(a)(3)(iii) (West 2000); *In re Marriage of Schweihs*, 272 Ill. App. 3d 653, 659, 650 N.E.2d 569 (1995). However, a party's right to have a petition heard by another judge is not automatic. In "order to be entitled to a hearing before another judge on whether a substitution for cause is warranted, the motion must allege grounds that, if taken as true, would justify granting a substitution for cause." *Alcantar v. Peoples Gas Light & Coke Co.*, 288 Ill. App. 3d 644, 649, 681 N.E.2d 993 (1997).

A trial judge is presumed to be impartial and the burden of overcoming this presumption rests with the party asserting bias, who must present evidence of personal bias stemming from an extrajudicial source and evidence of prejudicial trial conduct. *In re Marriage of Hartian*, 222 Ill. App. 3d 566, 569, 584 N.E.2d 245 (1991). In this case, respondent did not meet the threshold showing of bias or prejudice required to transfer the motion to another judge.

Respondent claims in essence that the probate court showed prejudice toward him by ruling against him on the Public Guardian's emergency motion to compel production of documents and by denying his initial motion for substitution of judge as of right filed on July 16, 2003. Respondent's claims are meritless.

Review of the record indicates that the probate court judgments at issue were based on the evidence. Moreover, our courts have determined that "erroneous findings and rulings by

the circuit court are insufficient reasons to believe that the court had personal bias or prejudice for or against a litigant." *In re Marriage of Hartian*, 222 Ill. App. 3d at 569, citing *McCormick v. McCormick*, 180 Ill. App. 3d 184, 194, 536 N.E.2d 419 (1988). Consequently, the probate court properly denied respondent's motion for substitution of judge for cause, without first transferring the matter for a hearing before a different judge.

Respondent next contends that the probate court erred in denying his motion to compel the Public Guardian and certain Hoellen family members to respond to his requests to admit facts and the genuineness of specified documents. We must reject respondent's contentions.

A request to admit facts pursuant to Supreme Court Rule 216 (134 Ill. 2d R. 216) is a discovery procedure the trial court has wide discretion in controlling. *Homer G. Dickson & Co. v. Barraza*, 115 Ill. App. 3d 5, 7, 449 N.E.2d 990 (1983). In this case, we cannot say the probate court abused its discretion in not requiring the Public Guardian and certain Hoellen family members to respond to a request for admission of facts and the genuineness of specified documents where the request was filed approximately five months after discovery had been closed and a few weeks before trial was to begin. See *Illinois State Toll Highway Authority v. Humphrey Estate*, 62 Ill. App. 3d 316, 326-27, 379 N.E.2d 626 (1978) (finding that trial court did not err

in not requiring petitioner to respond to request to admit filed three days prior to trial). Moreover, respondent was not prejudiced by the probate court's ruling, considering he never challenged any of the court's factual findings and his requests to admit concerned facts he could have proved up at trial.

Finally, respondent sets out a number of arguments as to why the probate court erred in entering a judgment against him for nominal and punitive damages. Each of these arguments will be addressed separately.

Respondent first contends that although article XVI of the Probate Act vests the probate court with the authority to return assets to Hoellen's estate, it did not give the court jurisdiction to litigate "collateral" claims such as undue influence and breach of fiduciary duty brought against him, and therefore the court erred in entering judgment against him for nominal and punitive damages based on these two legal theories. Respondent is incorrect.

Article XVI of the Probate Act grants a probate court broad powers to effectuate the discovery and recovery of a disabled person's real and personal property. See C. Golbert, *Using the Probate Act to Recover Assets Stolen from Persons with Disabilities*, 88 Ill. B.J. 510, 511 (2000). Section 16-1 of the Probate Act allows a party to file a citation petition on behalf of the estate, not only to discover information, but also to recover property. *In re Estate of Shugart*, 81 Ill. App. 3d 538,

1-05-0067 & 1-05-0090 (cons.)

540, 401 N.E.2d 611 (1980); *In re Estate of Weisberg*, 62 Ill. App. 3d 578, 585, 378 N.E.2d 1152 (1978). In such a proceeding, a probate court is authorized to "determine all questions of title, claims of adverse title and the right of property and may enter such orders and judgment as the case requires. If the respondent refuses to *** obey the court's order to deliver any personal property or, if converted, its proceeds or value, *** the court may enforce its order against the respondent's real and personal property in the manner in which judgments for the payment of money are enforced." 755 ILCS 5/16-1(d) (West 2000).

If a citation petition seeks the recovery of property, it "must make out cognizable legal claims against the respondent just like any other complaint." C. Golbert, 88 Ill. B.J. at 512; see *In re Estate of Shugart*, 81 Ill. App. 3d at 540; *In re Estate of Weisberg*, 62 Ill. App. 3d at 585; *In re Estate of Garrett*, 81 Ill. App. 2d 141, 147, 224 N.E.2d 654 (1967). Claims of undue influence and breach of fiduciary duty are two legal theories commonly asserted in a section 16-1 citation petition to recover property. See, *e.g.*, *In re Estate of Joutsen*, 100 Ill. App. 3d 376, 380-81, 426 N.E.2d 942 (1981) (citation petition hinged on legal theories of fiduciary relationship and undue influence); *In re Estate of Berry*, 277 Ill. App. 3d 1088, 1091, 661 N.E.2d 1150 (1996) (undue influence); *In re Estate of Miller*, 334 Ill. App. 3d 692, 697, 778 N.E.2d 262 (2002) (breach of fiduciary duty). In this case, article XVI of the Probate Act obviously gave the

1-05-0067 & 1-05-0090 (cons.)

probate court the authority to litigate claims of undue influence and breach of fiduciary duty brought against respondent.

In a related argument, respondent maintains that a circuit court acting under the Probate Act is a creature of statutory enactment, not empowered to exercise general chancery

1-05-0067 & 1-05-0090 (cons.)

jurisdiction,[2] and therefore the court in this case did not have the power or jurisdiction to enter a judgment against him for money damages.  Respondent is incorrect.

On January 1, 1964, the jurisdiction of the probate court was expanded to hear all justiciable matters. See, *e.g.*, *Radice*

---

[2] The American legal system has its origins in England, where litigation occurred in a bifurcated system of "'common law' or 'law' courts, and 'Chancery' or 'equity' courts." S. Subrin, *How Equity Conquered Common Law: The Federal Rules of Civil Procedure in Historical Perspective*, 135 U. Pa. L. Rev. 909, 914 (1987).

1-05-0067 & 1-05-0090 (cons.)

*v. Antonacci*, 87 Ill. App. 2d 139, 144, 231 N.E.2d 107 (1967) (stating that since the establishment of a single circuit court in 1964, the probate division of the circuit court has chancery jurisdiction); *In re Estate of Breault*, 63 Ill. App. 2d 246, 270, 211 N.E.2d 424 (1965) ("as of January 1, 1964, Illinois has replaced the limited jurisdiction of the Probate Court with the unified general jurisdiction of the Circuit Court pursuant to sec 9 of the New Judicial Article VI of the Illinois Constitution, granting to the circuit court 'unlimited original jurisdiction of all justiciable matter.'"). Moreover, prior to 1964, Illinois courts determined that even though a probate court did not possess general equity or chancery jurisdiction, it was still empowered to enforce its decrees and orders by chancery proceedings. See *In re Estate of Hauser*, 40 Ill. App. 2d 150, 155, 189 N.E.2d 370 (1963).

Respondent next contends that the probate court was not empowered to award nominal or punitive damages based on count II (undue influence) or count III (breach of fiduciary duty) of the citation, because these counts did not contain requests for such damages. Respondent claims that the probate court erred in awarding punitive damages because the Public Guardian failed to prove count IV (fraudulent misrepresentation) and count V (duress), which specifically requested punitive damages. Again, respondent is incorrect.

The purpose of requiring a specific prayer for relief in a

complaint is to inform defendant of the nature of the claims against him and the extent of damages sought, so that he may prepare to meet the demand or permit a default to be taken against him. *Rauscher v. Albert*, 145 Ill. App. 3d 40, 43, 495 N.E.2d 149 (1986). Section 2-604 of the Code provides that with the exception of default judgments and cases involving prejudice to the adverse party by reason of surprise, the prayer for relief does not limit the relief obtainable. 735 ILCS 5/2-604 (West 2002); *Dils v. City of Chicago*, 62 Ill. App. 3d 474, 481, 378 N.E.2d 1130 (1978). In this case, respondent was not prejudiced by unfair surprise regarding the punitive damage award since the allegations in the Public Guardian's citation petition and its June 4, 2004, response to the respondent's motion to strike the jury demand clearly put respondent on notice that compensatory and punitive damages were being sought.

Respondent finally contends that the probate court erred in awarding punitive damages where they were accompanied by only nominal damages.[3] In support of this argument respondent relies

---

[3] The Restatement (Second) of Torts states that nominal damages are a trivial sum of money awarded to a litigant who has established a cause of action but has not established that he is entitled to compensatory damages. The Restatement goes on to state that nominal damages are to be distinguished from compensatory damages on one hand and punitive damages on the other, in that they are granted irrespective of harm to the

1-05-0067 & 1-05-0090 (cons.)

 primarily on the decision in *Kemner v. Monsanto Co.*, 217 Ill. App. 3d 188, 576 N.E.2d 1146 (1991).  *Kemner* does not support

---

complainant or of a bad state of mind on the part of the defendant. Restatement (Second) of Torts § 907 (1979); see also *Wallace v. City of Rock Island*, 323 Ill. App. 639, 642, 56 N.E.2d 636 (1944) ("[n]ominal damages are such damages as are awarded in cases where the alleged negligence is proved, but where there is either a failure of proof as to damages suffered or no damages resulted").

1-05-0067 & 1-05-0090 (cons.)

respondent's position.

In *Kemner*, a train derailed, spilling 19,000 gallons of a wood preservative containing a small quantity of the chemical dioxin.  Residents living near the chemical spill brought an action for damages against the chemical manufacturer.  The jury awarded plaintiffs "0" in actual damages, $1 each for economic loss, and $16,250,000 in punitive damages.  The reviewing court determined that in the absence of actual damages, nominal damages alone could not support the award of punitive damages where there were no allegations of an intentional tort and the jury instructions defining willful and wanton conduct omitted any reference to intentional conduct. *Kemner*, 217 Ill. App. 3d at 199-200.  *Kemner* does not support respondent's position because, unlike *Kemner,* there is no dispute in this case that the conduct at issue was intentional.

In addition, respondent overlooks the fact that the relief the probate court ordered was not limited to nominal damages.  In addition to punitive and nominal damages, the probate court vacated the quitclaim deed and trust, and removed respondent from Hoellen's bank accounts and death benefits.  Moreover, courts in Illinois have allowed punitive or exemplary damages even when they were supported by only nominal damages. See *McNay v. Stratton*, 9 Ill. App. 215 (1881) (holding that punitive damages can be awarded in an action for false imprisonment without proof of actual damages); *Pratt v. Davis*, 118 Ill. App. 161, 181-82

1-05-0067 & 1-05-0090 (cons.)

(1905) (holding that punitive damages can be given even though a plaintiff's loss is nominal); *First National Bank of Des Plaines v. Amco Engineering Co.*, 32 Ill. App. 3d 451, 455, 335 N.E.2d 591 (1975) (remanding for failure to award nominal damages and allowing plaintiffs to amend complaint to seek punitive damages), *superceded by statute on other grounds in Wujcik v. Gallagher & Henry Contractors*, 232 Ill. App. 3d 323, 328, 596 N.E.2d 199 (1992).

The question of whether punitive damages can be awarded in a particular case is a matter of law. *Knierim v. Izzo*, 22 Ill. 2d 73, 87, 174 N.E.2d 157 (1961); *Cirrincione v. Johnson*, 184 Ill. 2d 109, 116, 703 N.E.2d 67 (1998). An award of punitive damages is appropriate where the underlying tort is accompanied by aggravated circumstances such as wantonness, willfulness, malice, fraud, or oppression, or when the defendant acts with such gross negligence as to indicate a wanton disregard for the rights of others. *PCx Corp. v. Ross*, 209 Ill. App. 3d 530, 539, 568 N.E.2d 311 (1991); *Cirrincione*, 184 Ill. 2d at 115-16. "The objectives of an award of punitive damages are the same as those which motivate the criminal law -- punishment and deterrence." *Mattyasovszky v. West Towns Bus Co.*, 61 Ill. 2d 31, 35, 330 N.E.2d 509 (1975). Punitive damages are not awarded as compensation, but instead serve to punish the offender and deter him and others from committing similar acts of wrongdoing in the future. *Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 414, 563

1-05-0067 & 1-05-0090 (cons.)

N.E.2d 397 (1990).

Our courts have determined that punitive damages are appropriate to punish and deter conduct where a defendant, as in this case, is found to have committed an intentional breach of fiduciary duty. *Glass v. M.D. Burkett*, 64 Ill. App. 3d 676, 683, 381 N.E.2d 821 (1978); *Obermaier v. Obermaier*, 128 Ill. App. 3d 602, 610, 470 N.E.2d 1047 (1984). We conclude that the probate court did not err in finding that respondent's conduct justified an award for punitive damages where he used his position as a Chicago police officer to gain Hoellen's trust and confidence, exert undue influence over him, and then flagrantly and intentionally breach the fiduciary duty he owed him. We agree with the views expressed by the reviewing court in *Central Bank-Granite City v. Ziaee*, 188 Ill. App. 3d 936, 948, 544 N.E.2d 1121 (1989), which when presented with a similar issue stated, "[w]e cannot think of a situation more deserving of an award of punitive damages than the case at bar in order not only to punish defendants, but also to deter others who might consider duping a senile and lonely octogenarian."

Accordingly, for the reasons set forth above, we affirm the orders of the circuit court of Cook County.

Affirmed.

GARCIA, P.J., and SOUTH, J., concur.