First Division

March 31, 2003

No. 1-02-0604

SOPHIA MARIE CASTRO, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County

)

)

) No. 97 L 8383

JOHN B. BELLUCCI, )

Indiv. and as an Agent )

and/or Employee of Family ) 

Medicine Specialists, Inc., ) 

FAMILY MEDICINE SPECIALISTS, ) Honorable

) Martin S. Agran,

Defendants-Appellees. ) Judge Presiding.

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, Sophia Marie Castro, appeals from the trial court's grant of dismissal as to portions of count III and count IV of her fourth amended complaint against defendants, Family Medicine Specialists, Inc. (Family Medicine) and John B. Bellucci, M.D.  For the reasons that follow, we reverse the judgment of the trial court and remand for further proceedings.

The facts necessary to our resolution of this appeal are as follows.  On May 7, 1996, Castro had an initial office visit with Dr. Jennifer Bellucci-Jackson for dysfunctional uterine bleeding.  Although Dr. Bellucci-Jackson did not take a complete history or perform a complete physical, she was made aware that Castro was experiencing painful headaches.  Dr. Bellucci-Jackson scheduled Castro for a pelvic ultrasound.  On May 12, Castro experienced a severe headache and dizziness, pursuant to which she was taken to the emergency room of Elmhurst Memorial Hospital.  There, she was evaluated and subsequently discharged.  

On May 14, as a follow-up to both her emergency room visit and her May 7 visit with Dr. Bellucci-Jackson, Castro saw Dr. John Bellucci, one of Dr. Bellucci-Jackson's partners at Family Medicine.  Dr. Bellucci was made aware of Castro's headaches and related symptoms.

 On May 15, Castro's mother, Stella Herrick, telephoned Dr. Bellucci-Jackson and informed her that Castro was suffering from a severe headache and dizziness.  Mrs. Herrick wanted to take Castro to a chiropractor; Dr. Bellucci-Jackson stated that she did not know of one to suggest for referral purposes.  Later that day, Castro saw W. John Cox, D.C., and underwent cervical manipulation.  Castro, who was 31 at the time, subsequently suffered a stroke.

On July 15, 1996, Castro filed a complaint at law against Dr. Cox and John Cox Chiropractic, Ltd., in which she alleged that Dr. Cox negligently failed to perform a neurologic exam prior to administering cervical manipulation.  Castro filed a first amended complaint on May 12, 1998.  Relevant to our decision here, in her first amended complaint, Castro named
 Drs. Bellucci and Bellucci-Jackson as respondents in discovery.
(footnote: 1)  Both were subsequently deposed.  

On February 11, 1999, Castro filed a second amended complaint, in which she converted Dr. Bellucci to a defendant on the basis of the May 14, 1996, visit.  Specifically, Castro alleged in count VII of that complaint that Dr. Bellucci was negligent in one or more of the following respects:

   "(a) [he] failed to perform appropriate neurologic 

examination on SOPHIA prior to chiropractic treatment; or

   (b) [he] failed to refer SOPHIA to a neurologist; or

   (c) [he] was otherwise negligent in treating SOPHIA."

Family Medicine was also named as a defendant, based upon its agency relationship with Dr. Bellucci.
(footnote: 2)  On April 16, 1999, Dr. Bellucci-Jackson was dismissed from the case.  

On August 10, 2001, Castro filed a fourth amended complaint. The initial counts are essentially the same as the second amended complaint in that they are directed against Family Medicine through its agent, Dr. John Bellucci.  Count III includes the following allegations: Castro's May 13 appointment with Dr. Jennifer Bellucci-Jackson was changed to May 14 at a different location; on May 14 Castro was evaluated by Dr. Bellucci; Dr. Belluci was negligent in his diagnosis and treatment on May 14 and those negligent acts were the direct and proximate cause of Castro's injuries.  Count IV, however, is different in that

16 paragraphs of count IV make specific reference to allegedly negligent conduct on the part of Dr. Jennifer Bellucci-Jackson on dates in May 1996, when she either saw plaintiff or spoke with her mother on the phone.  These allegations are identical or at least substantially the same (
i.e.
 failing to diagnose and treat symptoms of potential stroke) as those alleged against her colleague, Dr. John Bellucci.  Count IV alleges that Family Medicine, through its agents, was negligent in one or more of the following respects:

   "(a) failing to refer SOPHIA to a neurologist; or

   (b) failing to properly diagnose Sophia's condition; or

   (c) failing to properly evaluate and assess Sophia's     condition; or 

   (d) [was] otherwise negligent in treating SOPHIA." 

The physician's certificate of merit attached to the fourth amended complaint identifies the conduct of Dr. Jennifer Bellucci-Jackson as the basis of the amended claims against Family Medicine.

Family Medicine moved to dismiss those portions of count III that made reference to physicians other than Dr. John Bellucci and dates other than May 14, 1996, and count IV in its entirety, on the grounds that these claims are barred by the applicable statutes of limitations and repose.  On November 13, 2001, the trial court granted that motion with prejudice pursuant to section 2-619(a)(5) of the Code of Civil Procedure (the Code), finding that the claims at issue are time-barred.  735 ILCS 5/2-619(a)(5) (West 1998).  

On January 30, 2002, the trial court granted plaintiff's request for a finding pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) that there was no just reason to delay enforcement or appeal of the November 13 order of dismissal.

In this timely appeal, Castro contends that the trial court's dismissal of portions of count III and all of count IV was in error, because the claims at issue relate back to the timely filed second amended complaint under section 2-616(b) of the Code.  735 ILCS 5/2-616(b) (West 1998). 

Review of a trial court's order granting dismissal pursuant to section 2-619 is 
de
 
novo
.  
Epstein v. Chicago Board of Education
, 178 Ill. 2d 370, 383 (1997).  The question on appeal is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law."  
Kedzie & 103rd Currency Exchange v. Hodge
, 156 Ill. 2d 112, 116-17 (1993).   The statute of limitations for a medical malpractice action is found in section 13-212(a) of the Code and provides:

   "[N]o action for damages for injury or death against

any physician *** arising out of patient care shall

be brought more than 2 years after the date on which

the claimant knew, or through the use of reasonable 

diligence should have known, or received notice in

writing of the existence of the injury or death for 

which damages are sought in the action, whichever of

such date occurs first, but in no event shall such

action be brought more than 4 years after the date on

which occurred the act or omission or occurrence alleged 

in such action to have been the cause of such injury or death."  735 ILCS 5/13-212(a) (West 1998). 

Castro's fourth amended complaint, filed over five years after the events giving rise to the claims of medical negligence, is accordingly time-barred unless the amendments "relate back" to the second amended complaint, in which Family Medicine was first made a party defendant.  Section 2-616 governs amendments to pleadings filed after the statute of limitations period has expired.  That section provides in relevant part:

   "(b) The cause of action *** set up in any amended

pleading shall not be barred by lapse of time under

any statute or contract prescribing or limiting the

time within which an action may be brought or right

asserted, if the time prescribed or limited had not

expired when the original pleading was filed, and if

it shall appear from the original and amended 

pleadings that the cause of action asserted *** in the

amended pleading grew out of the same transaction or

occurrence set up in the original pleading ***."  735

ILCS 5/2-616(b)(West 1998).

The purpose of section 2-616(b) is to insure fairness to litigants rather than to unduly enhance the technical considerations of common law pleadings.  
Sompolski v. Miller
, 239 Ill. App. 3d 1087, 1090 (1992), citing 
Albany Park Service, Inc. v. Kenny-Pashen Joint Venture
, 209 Ill. App. 3d 432, 436 (1991); 
United Parcel Service v. Church's Fried Chicken, Inc.
, 174 Ill. App. 3d 378, 380 (1988).  To further this purpose, this court should liberally construe the requirements of section 2-616(b) in favor of hearing a plaintiff's claim.  
Sompolski
, 239 Ill. App. 3d at 1090, citing 
Williams v. Board of Education
, 222 Ill. App. 3d 559, 565 (1991).  "Medical malpractice plaintiffs, in particular, are afforded every reasonable opportunity to establish a case, and to this end, amendments to pleadings are liberally allowed to enable the action to be heard on the merits rather than brought to an end because of procedural technicalities." 
 
Avakian v. Chulengarian
, 328 Ill. App. 3d 147, 154 (2002).

Central to our inquiry is the question of whether the record reveals that the defendant was on notice, before the expiration of the statutory time period, of the facts upon which the claim set out in the amended complaint is based.  
Cammon v. West Suburban Hospital Medical Center
, 301 Ill. App. 3d 939, 946 (1998), citing  
Wolf v. Meister-Neiberg, Inc.
, 143 Ill. 2d 44, 46-48 (1991).  In determining whether the subsequent pleading relates back to the filing of the initial pleading, the focus is not on the nature of the causes of action, but on the identity of the transaction or occurrence.  
Zeh v. Wheeler
, 111 Ill. 2d 266, 272-73 (1986); 
Figueroa v. Illinois Masonic Medical Center
, 288 Ill. App. 3d 921, 924 (1997).  However, the cause of action asserted in the later complaint need not be identical to or substantially the same as the claim raised in the original pleading.  
Weber v. Cueto
, 253 Ill. App. 3d 509, 516 (1993).  Relation back will be allowed where the defendant has been made aware of the occurrence or transaction that is the basis for the plaintiff's claim.  
Zeh
, 111 Ill. 2d at 279.  The rationale for this rule is that a defendant will not be prejudiced so long as his attention has been directed within the limitations period to the facts that form the basis of the claim asserted against him.  
Zeh
, 111 Ill. 2d at 273, citing 
Simmons v. Hendricks
, 32 Ill. 2d 489, 495 (1965).  

Family Medicine contends that its attention was not directed to the allegations at issue in the fourth amended complaint prior to the expiration of the statutes of limitations and repose.  On the contrary, Family Medicine argues, the original complaint did not involve Family Medicine, Dr. John Bellucci or Dr. Jennifer Bellucci-Jackson.  Both Drs. Bellucci and Bellucci-Jackson were named as respondents in discovery in the first amended complaint, after which the second amended complaint named only Dr. Bellucci as a defendant (and Family Medicine as Dr. Bellucci's principal).  Dr. Bellucci-Jackson was dropped from the lawsuit entirely.  As such, Family Medicine asserts, there was no reason for it to have explored the potential negligence of Dr. Bellucci-Jackson in the discovery that has taken place thus far in the litigation.

Castro insists that the fourth amended complaint neither adds party defendants nor sets forth any new theories of liability.  According to Castro, the allegations against Family Medicine (already a defendant) made in the fourth amended complaint grew out of the same occurrence alleged in the second amended complaint, 
i.e.
, the conduct of Family Medicine via its employee or agent prior to Castro's May 15, 1996, stroke.  This, she urges, constitutes sufficient notice to trigger the application of the relation back doctrine.

In support, Castro relies upon the holdings in 
McArthur v. St. Mary's Hospital of Decatur
, 307 Ill. App. 3d 329 (1999), 
Cammon v. West Suburban Hospital
, 301 Ill. App. 3d 939 (1998), 
and 
Marek v. O.B. Gyne Specialsts, II, S.C.
, 319 Ill. App. 3d 690 (2001).  

In 
McArthur
, the plaintiff sued the defendant hospital and several defendant doctors for the death of a baby due to complications during the birth process.  In the original complaint, the only allegation made against the hospital was that it "'[f]ailed to implement and/or enforce a policy requiring a permanent radiographic image of all ultrasound sonogram examinations be maintained.'"  
McArthur
, 307 Ill. App. 3d at 331. The allegations against other defendants included the failure to correctly read the sonograms and X rays taken and the failure to diagnose the hydrocephalus from which the deceased infant suffered.  First and second amended complaints were subsequently filed with the same sole allegation against the hospital.  
McArthur
, 307 Ill. App. 3d at 331-32.

Discovery proceeded among the parties, and during the deposition of one of the defendant radiologists, it was discovered that the radiologist never evaluated the X rays at issue and that, instead, one of the hospital technicians had that responsibility.  
McArthur
, 307 Ill. App. 3d at 332.  Though outside of the statute of limitations period by that time, the plaintiffs moved for leave to file a third amended complaint, in which seven new allegations were added against the hospital, relating to the negligent interpretation of the sonogram and X rays by one of its agents on a date different from that specified in earlier complaints. 

The hospital moved for and was granted summary judgment, arguing that the new allegations set forth different conduct by different people than in the original pleadings, and were therefore time barred.  
McArthur
, 307 Ill. App. 3d at 333.  This court reversed, finding that from the beginning of the litigation, the hospital was aware that the plaintiffs were asserting negligence in connection with the reading of the sonogram and X ray in that these claims had already been asserted against certain agents of the hospital (the doctors).  The court found neither prejudice nor unfair surprise to the hospital in allowing the amended claims to relate back, since the hospital knew the involvement of its own personnel in the reading of the films from the suit's inception.  
McArthur
, 307 Ill. App. 3d at 336.

In 
Cammon
, the defendant hospital was sued vicariously in the original complaint for the negligence of three doctors in misinterpreting the decedent's CT scans.  In separate counts, the defendant surgeon was accused of failing to achieve adequate hemostasis (arrest of bleeding) following surgery on the decedent.  
Cammon
, 301 Ill. App. 3d at 942.  After summary judgment motions by certain defendants, the plaintiff voluntarily dismissed all of the defendants except for the hospital and the surgeon.  Although the original complaint specifically attributed negligence in decedent's postoperative care to the surgeon and not the hospital (other than as his employer), the plaintiff filed a second amended complaint, after the statute of limitations had run, in which she asserted several claims against the hospital itself for the acts and omissions of unnamed nurses, residents, medical technicians, anesthesiologists and other health care professionals for the failure to achieve adequate hemostasis.  
Cammon
, 301 Ill. App. 3d at 943. 

The trial court granted the hospital's motion for dismissal of the hemostasis allegations against hospital employees other than the surgeon originally named pursuant to section 2-619(a)(5).  Although the negligence alleged against the hospital involved different conduct by different persons than alleged against the hospital in the original complaint, this court reversed.  Specifically, the court in 
Cammon
 stated that because an allegation related to the failure to achieve adequate hemostasis was made against the surgeon in the original complaint, claims related to the decedent's surgery in the amended complaint related back to the original complaint.  
Cammon
, 301 Ill. App. 3d at 947.  The court reasoned that, based on the record, the defendant hospital was put on notice from the outset of the litigation, prior to the expiration of the limitations period, that the plaintiff was claiming that a failure to achieve adequate hemostasis in connection with the abdominal wall surgery was a proximate cause of the decedent's injury and subsequent death.  
Cammon
, 301 Ill. App. 3d at 947.  

Most recently, in 
Marek
, the plaintiff appealed the trial court's dismissal of her second amended complaint against the defendant entity, O.B. Gyne, based on the running of the statute of limitations.  The original complaint named O.B. Gyne and several other defendants, and alleged that these medical care providers failed to properly diagnose, advise and treat her for breast cancer.  
Marek
, 319 Ill. App. 3d at 691.  In count III of her original complaint, the plaintiff sued Dr. Lupo for negligence, and sued O.B. Gyne, Dr. Lupo's employer, as a principal.  In count I of her second amended complaint, filed well after the statute of limitations had run, the plaintiff alleged that her gynecologist, Dr. McGill, was an agent of O.B. Gyne, upon his retirement all of his records became the property of O.B. Gyne and, therefore, O.B. Gyne was directly negligent for failing to advise Marek of the abnormalities discovered in a mammography report subsequent to Dr. McGill's retirement.  
Marek
, 319 Ill. App. 3d at 694.  In count II of her second amended complaint, Marek alleged that she was unaware of her direct cause of action against O.B. Gyne until it answered discovery, at which time she determined that O.B. Gyne possessed McGill's records and only after this discovery did she realize that a direct cause of action existed against O.B. Gyne.  
Marek
, 319 Ill. App. 3d at 694.  Further, the second amended complaint alleged that Lupo was negligent by failing to refer Marek for further diagnostic testing.  

This court reversed the trial court's dismissal of the entire case and remanded, holding that O.B. Gyne's attention was directed to the allegations of negligence made against its agent at the time the original complaint was filed, despite the fact that the allegations made against it directly in earlier complaints were based upon the conduct of a different agent.  The court
 reasoned that because O.B. Gyne had been made aware of the occurrence that formed basis for the claim (the failure to properly diagnose and treat the plaintiff's cancer), it was able to adequately prepare to meet the plaintiff's claims regardless of the theory under which they were brought.  
Marek
, 319 Ill. App. 3d at 698, citing 
Zeh
, 111 Ill. 2d at 279.

We find the reasoning employed in 
McArthur
, 
Cammon
 and 
Marek
 to be persuasive in the case at bar and reflective of the court's liberal application of the relation back doctrine to achieve resolution on the merits in medical malpractice cases.  First, we note that the second amended complaint naming Dr. John Bellucci and Family Medicine as defendants was filed within the statutory period and it is that complaint which is relevant in our analysis.  The second amended complaint essentially alleged that Dr. John Bellucci and vicariously, Family Medicine, were negligent in failing to identify and diagnose plaintiff's symptoms which proximately led to a stroke.  Four years later and outside the statutory period, plaintiff filed a fourth amended complaint claiming that a different agent, Dr. Jennifer Bellucci-Jackson (as well as Family Medicine, which was already named) was negligent for the same conduct and on related, but different, dates in May 1996.  Family Medicine does not dispute that Dr. Bellucci-Jackson was also its employee and agent in May 1996 when she saw Castro at the clinic.  As such, Family Medicine was, at all relevant times, aware that Dr. Bellucci-Jackson was involved in Castro's treatment.

Though Family Medicine claims to have been prejudiced by the lack of focus on the actions of Dr. Bellucci-Jackson, we find that it was nevertheless supplied with the essential information necessary to prepare a defense to a claim related to her part in the same occurrence, when the identical allegations were later leveled with respect to her conduct.  
See 
Zeh
, 111 Ill. 2d at 272-73.  We believe that Family Medicine was aware, from the outset, of plaintiff's potential claim against Dr. Bellucci-Jackson because she treated Castro for the same symptoms--albeit on dates immediately prior and subsequent to the time she was seen by Dr. John Bellucci.  The fact that she was dismissed from the case after being named a respondent in discovery does not diminish our conviction that the hospital was aware of this agent's role in plaintiff's treatment long before her dismissal.  Family Medicine, therefore, had the opportunity to investigate.

Family Medicine, however, contends that the allegations contained in Counts III and IV of the fourth amended complaint "vastly broaden" its exposure in that they allege different conduct as grounds for vicarious liability and new dates on which the allegedly negligent conduct occurred.  In support, Family Medicine relies on 
Bailey v. Petroff
, 170 Ill. App. 3d 791 (1988).  In 
Bailey
, the plaintiff's child was born with serious birth defects.  In her original complaint, the plaintiff alleged medical malpractice against the defendant doctor in that he:

   "(a) Negligently and carelessly gave plaintiff, 

Barbara Bailey, a prescription for the drug Bendectin 

when defendant knew or should have known of its

ability to cause birth defects;

   (b) Negligently and carelessly failed to keep informed

of the medical literature concerning adverse effects

of Bendectin when prescribed for pregnancy;

   (c) Failed to recommend the proper dosage of 

Bendectin for the plaintiff, Barbara Bailey."

Bailey
, 170 Ill. App. 3d at 793-94.

After the expiration of the statute of limitations period, the plaintiff filed a first amended complaint, in which she dropped all references to the prescribing of the drug Bendectin and instead alleged:

   "(a) Defendant [doctor] negligently and carelessly 

failed to inform the plaintiff that the complications

of her pregnancy were not normal;

   (b) Defendant negligently and carelessly failed to

inform the plaintiff of the availability of diagnostic

tests to detect abnormalities of fetuses;

   (c) Defendant negligently and carelessly failed to 

prescribe diagnostic tests to determine whether the 

fetus was normal;

   (d) Defendant negligently and carelessly assured the 

plaintiff that her pregnancy was proceeding normally,

when there was reason to believe that it was not."

Bailey
, 170 Ill. App. 3d at 794.

Affirming the trial court's dismissal of the first amended complaint on the grounds that it was time barred and did not relate back to the original complaint, the court in 
Bailey
 noted that the negligent conduct alleged in the two complaints was wholly different.  In particular, the original complaint charged active negligence in the form of prescribing a drug that was known to cause birth defects, whereas the first amended complaint abandoned that approach altogether and instead charged negligence based on the failure to recommend prenatal testing and to otherwise diagnose the baby's disorder.  
Bailey
, 170 Ill. App. 3d at 797-98.  

Stating that this was "obviously" not "a situation where the two versions of the complaint merely set forth different theories of liability," the court concluded that the original complaint did not adequately inform the defendant of the facts necessary to investigate the claim that was ultimately asserted against him in the second amended complaint.  
Bailey
, 170 Ill. App. 3d at 798, citing 
Whitney v. City of Chicago
, 155 Ill. App. 3d 714, 719 (1987). 

We find 
Bailey
 distinguishable.  Here, it was Castro's theory, from the time Family Medicine was first named, that the failure to properly diagnose and treat Castro's symptoms proximately caused her to suffer a stroke.  Unlike 
Bailey
, Castro did not drop all or any of the allegations contained in her second amended complaint, nor did she replace allegations earlier stated with ones that are entirely new.  On the contrary, the earlier made allegations of negligence are
 
repeated in the fourth amended complaint, and the facts upon which the claims in counts III and IV of the complaint are based did not change, despite the fact that the conduct of a different agent or agents were called into question. 

We find this case more analogous to 
McArthur
 where the court stated: "Because these allegations were made against the hospital's codefendants and were at the heart of plaintiff's case, the hospital was aware of them and knew the extent of the involvement of its own personnel."  
McArthur
, 307 Ill. App. 3d at 335.

Accordingly, we are unable to conclude that Family Medicine suffered prejudice or unfair surprise as a result of the additional claims.

For the reasons set forth herein, we determine that Family Medicine was adequately apprised, before the expiration of the statutory time period, of the facts upon which the claims set out in counts III and IV of the fourth amended complaint are based.  The trial court's order dismissing those claims is therefore reversed, and the cause remanded for further proceedings.

Reversed and remanded.

GORDON, P.J. and MCNULTY, J. concur. 

FOOTNOTES
1:
Drs. Richard De Angelo and Lee Nicholas Dennis, their professional corporations and Elmhurst Hospital were also named as respondents in discovery.  Dr. De Angelo and Elmhurst Hospital were later converted to defendants in a third amended complaint.  Their inclusion is not a subject of this appeal.

2: Count VII of the second amended complaint contained identical allegations and was brought on behalf of Castro's husband, Conrad, for loss of consortium.