2021 IL App (1st) 191153-U

No. 1-19-1153

Order filed March 31, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MIDEN PROPERTY HOLDINGS, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CH 12423 |
| | ) | |
| MURAD SWEISS, ELITE FINANCIAL | ) | |
| INVESTMENTS, INC., CHICAGO TITLE LAND | ) | |
| TRUST COMPANY as Trustee under Trust No. 03-9894, | ) | |
| THOMAS KAPUT, JOSEPH COLUCCI, MELISSA | ) | |
| SWEISS, and Unknown Owners and Non-Record | ) | |
| Claimants, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| (Elite Financial Investments, Inc., and Thomas Kaput, | ) | Honorable |
| Third-Party Plaintiffs-Appellees; and Melissa Landis- | ) | Sanjay Tailor, |
| Sweiss, Third-Party Defendant-Appellant). | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Gordon and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:  In the third-party plaintiffs' action seeking declaratory relief and to quiet title to real property and asserting claims of trespass to chattel and slander of title, the trial court did not abuse its discretion by allowing the plaintiffs to amend their third-party complaint, excluding evidence and awarding punitive damages.

¶ 2    In a title dispute over real property, third-party plaintiffs Elite Financial Investments, Inc. (Elite) and Thomas Kaput sought declaratory relief and compensatory and punitive damages against third-party defendant Melissa Landis-Sweiss (Melissa) based on allegations that she engaged in fraud and forged Kaput's signature to a warranty deed to convey the disputed property to herself.

¶ 3    After a bench trial, the court entered judgment in favor of Kaput and against Melissa, declared that Kaput was the rightful owner of the property, declared the forged warranty deed null and void, and awarded Kaput $15,000 in compensatory damages for trespass to chattel and $175,000 in punitive damages for slander of title.

¶ 4    On appeal, Melissa argues the trial court erroneously (1) allowed the filing of an amended third-party complaint against her on the eve of trial, (2) denied her motion for judgment on the pleadings, (3) denied her motion to bar expert witness testimony, (4) excluded evidence of a letter of direction concerning the property at issue from her husband to a title company, and (5) awarded punitive damages against her.

¶ 5    For the reasons that follow, we affirm the judgment of the circuit court with a modification concerning the award for punitive damages.[1]

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 6                                    I. BACKGROUND

¶ 7      This appeal arose from a controversy involving three adjacent parcels of real estate, commonly known as 1912, 1914-1916, and 1918 West Division Street, Chicago, Illinois. This appeal involves the 1912 West Division Street property (the Property).[2]

¶ 8      This action was initiated on March 19, 2009, when Miden Property Holdings, Inc. (Miden) filed a complaint to foreclose a judgment lien against the Property. Miden was a judgment creditor of defendant Murad Sweiss (Murad) due to a December 7, 2007 judgment in case No. 04 CH 2629 in favor of Miden and against Murad for $270,000. The complaint alleged the judgment was recorded on December 17, 2007.

¶ 9      On April 13, 2009, Murad and Elite Financial Investments, Inc. (Elite) moved to dismiss the complaint, arguing that the title holder to the Property was Elite and Murad had no right, title or interest in the Property. Attached to the motion was a copy of a December 20, 2007 trustee's deed, which stated that the land trust number 03-9894 conveyed and quit claimed the Property to "Elite Financial, Inc." for $10. That trustee's deed was recorded on December 21, 2007. Later, this motion to dismiss was withdrawn and Miden was given leave to file an amended complaint.

¶ 10      In November 2009, Miden filed an amended complaint for declaratory relief, fraudulent conveyance and mortgage foreclosure. Miden alleged defendants engaged in a scheme to fraudulently move Murad's assets beyond the reach of the court and Miden when defendants attempted to transfer title of the Property to the entity "Elite Financial, Inc." (EFI) via the December 2007 trustee's deed. Miden alleged that the attempted transfer, however, was invalid

---

[2] The other parcels of property were litigated in *Sweiss v. Vitogiannis*, case Nos. 04 CH 2629 and 1-08-2118, and *American Chartered Bank* v. Colluci, case No 09 CH 16591.

and illegal because EFI did not exist when the trustee's deed was recorded. Specifically, EFI was an Illinois corporation that had been dissolved involuntarily in October 1998 and neither Murad nor defendant Thomas Kaput ever had an interest in EFI. Miden argued that, because the transfer of title to EFI was neither legal nor valid, the title to the Property legally remained in trust number 03-9894.

¶ 11   Miden also alleged that Murad subsequently caused two more deeds to be created, executed and recorded in an attempt to transfer the Property again. One, a warranty deed dated May 13, 2008, and recorded on August 28, 2009, purported to transfer the Property from EFI to Murad's wife, Melissa. This warranty deed bore the purported signature of Kaput as the president of EFI. The other deed was the December 20, 2007 trustee' deed, which was previously recorded on December 21, 2007, but now was altered to change or correct the grantee from EFI to Elite and was recorded again on September 29, 2009. Miden argued that these transfer and changes to the deeds were fraudulent and done without authority to cloud the title. Ultimately, the trial court would dismiss Miden's amended complaint for want of prosecution.

¶ 12   In their March 2010 answer, defendants Kaput and Elite, which was Kaput's company, denied the allegations of wrongdoing. They denied that Murad was Kaput's longtime partner but admitted that Murad was an employee for a period of time. They admitted that Elite claimed an interest in the Property. They alleged that the December 20, 2007 trustee's deed conveyed the Property to Elite, not EFI, and they had no knowledge of Miden's judgment against Murad when the Property was transferred. They alleged the original reference in the trustee's deed to EFI instead of Elite was a typographical error, which they corrected when they recorded the trustee's deed again on September 29, 2009. They alleged that the trustee's deed accurately listed Elite's

address—1914-1916 West Division—and thereby demonstrated that the intended recipient was Elite and not EFI. Kaput denied signing any deed transferring any property to Melissa. Kaput and Elite moved to dismiss Miden's foreclosure claim, arguing that Miden had no standing because it was not a creditor of Elite and did not legally possess any mortgage between either Miden and Elite or Elite and Murad.

¶ 13    On October 8, 2010, Kaput, the sole officer/principal of Elite, and Elite moved for leave to file a crossclaim seeking a declaratory judgment and a claim to quiet title against defendants Murad and Melissa for preparing a fraudulent warranty deed that purported to transfer the Property in the name of Elite to Melissa. Kaput and Elite alleged that in November or December 2007, Kaput agreed to allow Murad to secure a $250,000 loan against another lot that was in Elite's name. As security for that loan, Murad transferred the Property into the name of Elite. Thereafter, Murad and Melissa, without the knowledge of Kaput and Elite, forged Kaput's signature on the May 2008 warranty deed to transfer the Property into Melissa's name. Kaput and Elite never received any consideration for this purported sale. The forged warranty deed was recorded in August 2009. Furthermore, that deed was prepared by Aaron Spivack, a friend and attorney of Murad. Spivack notarized the deed and his former employee notarized the statement by grantor and grantee. Kaput and Elite asked the court to declare that the May 2008 warranty deed was ineffective to transfer title of the Property from Elite to Melissa; the purported transfer of the Property through the delivery and recordation of Melissa was null and void; Elite has held title to the Property since December 2007; Melissa never held legal or equitable title to the Property; and the warranty deed purporting to transfer the Property from Elite to Melissa was invalid and legally ineffective. Kaput and Elite also asked the court to quiet title to the Property in Elite's name and award them costs,

expenses and other appropriate relief. On October 22, 2010, the trial court granted Kaput and Elite's motion to file their crossclaim.

¶ 14    In June 2013, the trial court granted Kaput and Elite's motion for leave to file a third-party complaint to quiet title and for declaratory relief against Melissa. They alleged that Elite was named as the owner of the Property via the December 2007 trustee's deed, but that deed failed to correctly list Elite's name. On March 5, 2008, a notice of correction was filed with the recorder's office to record the trustee's deed again with Elite's correct name. On May 13, 2008, Melissa executed a warranty deed that purportedly transferred the Property from Kaput, as the president of the incorrectly listed EFI, to Melissa. Kaput, however, never signed that warranty deed or authorized anyone to sign it. Melissa had no interest in the Property, the warranty deed was fraudulent, and she falsely executed and recorded it to cloud the chain of title on the Property. Kaput and Elite asked the court to declare Elite the rightful owner of the Property and declare the warranty deed executed by Melissa invalid and void.

¶ 15    On September 18, 2014, Kaput and Elite moved for a default order against Melissa based on her failure to appear and file a responsive pleading to their third-party complaint. However, Melissa filed an appearance on October 14, 2014. Her counsel was subsequently disqualified.

¶ 16    On February 10, 2015, Kaput and Elite moved for a default judgment against Melissa, based on her failure to file an appearance with new counsel and respond to the third-party complaint. The trial court entered a default order against her and set the matter for prove up. However, in March 2015, Melissa's counsel filed an appearance and moved to vacate the default, which the trial court granted in April 2015.

¶ 17    On February 7, 2017, the court dismissed Miden's case for want of prosecution, but Elite and Kaput's 2013 third-party complaint against Melissa was still pending. On March 2, 2017, the court reinstated this case with Elite and Kaput as the plaintiffs and Melissa as the defendant. On June 19, 2017, the court dismissed Kaput as a party, but he was later revived as a co-plaintiff with Elite when they filed their amended third-party complaint on April 15, 2019. This complaint added counts for trespass to chattel, a business accounting and slander of title, which requested punitive damages.

¶ 18    Meanwhile, on March 12, 2019, Melissa filed a motion for judgment on the pleadings as to the 2013 third-party complaint. The sole issue advanced in this motion was that the scrivener's errors regarding the case number and attached exhibit mandated dismissal. This motion was fully briefed and argued before the trial court and ultimately denied on April 15, 2019.

¶ 19    The bench trial took place on April 16, 17, 18 and 24, 2019. On May 3, 2019, the court entered judgment in favor of Kaput and against Melissa. The following summary is taken from the court's 10-page written judgment.

¶ 20    Based on the evidence at trial, the court found that Elite operated a mortgage brokerage firm from 2003 until it closed in 2008. It was administratively dissolved on August 12, 2011, for failure to file an annual report and pay a franchise tax. Kaput, a licensed real estate broker, was Elite's sole officer, director and shareholder. Before the housing market downturn in late 2008, Elite had several offices in Chicago and employed 75 loan officers.

¶ 21    Kaput met Melissa and Murad at a realtor convention. Elite employed them from 2004 to 2007. Although Murad was given the title of chief executive officer of Elite, he only managed a branch office of Elite, did not have a real estate broker's license, was not an officer or director of

Elite, and did not have any ownership interest in Elite. He was paid on commission and was Kaput's trusted confidant. At Murad's request, Elite hired Melissa to work as a loan processor on an independent contractor basis.

¶ 22 Between 2007 and 2008, Murad borrowed a total of $950,000 from Elite to finance his real estate development projects outside of Elite. On June 12, 2007, Murad executed a promissory note in favor of Elite for $237,000. Kaput also maintained a ledger of some of the money that Murad borrowed from Elite. However, other than that note and ledger, there was no documentation of the money that Murad borrowed from Elite. The court found that Kaput credibly testified that he did not require Murad to execute a promissory note for the entire $950,000 because Kaput trusted him.

¶ 23 Murad owned the beneficial interest in a land trust that held title to the Property. In late 2007, Murad and Kaput agreed that, in order to satisfy Murad's indebtedness to Elite, Murad would direct the title company, as the trustee of the land trust, to transfer to Elite the Property and additional property located at 1918 West Division Street in Chicago. On December 20, 2007, the title company executed a trustee's deed conveying the Property to EFI, which did not exist at the time. The court found that the trustee's deed for the Property contained a scrivener's error because Murad intended to transfer the Property to Elite. Accordingly, the court reformed the trustee's deed to conform to Murad and the title company's intent to transfer the Property to Elite. The court found that Melissa's testimony that EFI was a company Kaput and Murad intended to form to jointly develop the Property lacked foundation and was based on hearsay.

¶ 24 Melissa's claim to the Property rested on the disputed May 13, 2008 warranty deed, pursuant to which EFI, which did not exist then, transferred the Property to her. When Melissa was called by Kaput and Elite as an adverse witness, the court found that she was not credible.

She immediately launched into a harangue and protested the court's alleged lack of jurisdiction over her even though she had defended this case on the merits for several years. She argued she had no time to prepare for trial even though the trial was set months ago. She was evasive and oftentimes combative. The court found that the credible evidence established that Melissa was not the victim here but rather played a starring role in a scheme to defraud Kaput and Elite out of the Property.

¶ 25    According to Melissa, Kaput owed Murad $950,000 and the May 2008 warranty deed transferred the property to Melissa to satisfy Kaput's debt to Murad. Melissa did not call Murad, a Florida resident, as a witness, and the trial court granted Murad's motion to quash the subpoena to compel his appearance at trial based on Kaput and Elite's failure to cite any legal authority that would permit the court to compel Murad's appearance. The court excluded Melissa's testimony regarding Murad's business dealings with Kaput and Elite based on lack of foundation, hearsay and other evidentiary defects because Melissa admitted that her knowledge of Murad's business dealings was based on what he told her. Melissa offered no evidence to challenge the $237,000 promissory note that Murad executed in favor of Elite or the ledger evidencing other amounts of money Murad borrowed from Elite. Melissa asserted that Murad wanted to appear at the hearing and attributed his absence to financial constraints and attending activities that had been planned for their minor children.

¶ 26    The court found that the May 2008 warranty deed was forged to indicate that Kaput signed it as the president of EFI. Moreover, the statement by the grantor and grantee appeared to be signed by the same person and Melissa did not establish that person's identity. Kaput testified credibly that he did not sign the warranty deed and was not aware of it. Spivack was a notary public, attorney

and friend of Murad and Melissa, and represented them in numerous matters. Spivack had prepared the May 2008 warranty deed. Contrary to his certification when he notarized the warranty deed, Spivack admitted that Kaput did not appear before him and Spivack did not witness Kaput sign the warranty deed. According to Spivack and his paralegal Norma Garbutt, Murad came to Spivack's office on May 13, 2008, and picked up the prepared warranty deed. Murad took the deed to someone sitting in a car parked in front of Spivack's office. Murad then returned to Spivack's office and gave Garbutt the signed warranty deed and a copy of Kaput's driver's license, which Garbutt copied and returned to Murad. Spivack then notarized the warranty deed. Spivack did not know Kaput and did not compare the signatures on the driver's license and the warranty deed.

¶ 27 Contradicting Spivack and Garbutt, Melissa asserted that she went to Spivack's office with her children on May 13, 2008, and Kaput had signed the warranty deed in April 2008, before Spivack notarized it. Spivack, however, testified that he would never notarize a post-dated deed. The trial court found that Melissa's testimony was not credible, noting that her counsel claimed during earlier proceedings that Spivack had signed the warranty deed as Kaput's agent. Furthermore, Kaput had filed a claim with Spivack's notary bond insurer and received the maximum bond liability payout for his claim. In addition, the May 2008 warranty deed was not recorded until August 2009, more than one year after Kaput purportedly signed it, and Kaput paid the taxes on the Property for most years.

¶ 28 Melissa failed to offer competent evidence to support her claim that Kaput signed a document whereby Elite granted Murad a mortgage on the Property on January 24, 2007, as security for a $950,000 loan from Murad. The court found no support for the authenticity of this document because (1) Murad did not testify and Melissa could not lay a foundation for the

purported loan or mortgage, (2) Kaput's signature was another forgery notarized by Melissa, (3) Elite could not have granted Murad a mortgage on the Property in January 2007 because Elite did not own the Property until December 2007, and (4) Melissa's testimony that Murad employed a "shell mortgage" to protect his interest in the property while he and Kaput sought financing to develop it under a corporation called EFI, which they would form later, was hearsay, had no foundation and was "utterly nonsensical." Melissa also failed to offer competent evidence to support her claim that Murad had an ownership interest in Elite.

¶ 29    The court barred a substantial portion of the basis of the opinion of Kaput and Elite's expert, Curt Baggett, because it was not disclosed to Melissa on a timely basis. However, the court found persuasive Baggett's opinion on the habits of signers and that Kaput did not sign the mortgage. Melissa's expert, Rosemary Urbanski, based her testimony on photocopies of the warranty deed and mortgage, not originals. Regarding the mortgage, the best that Urbanski could opine was that there were "indications" that Kaput signed it. She admitted, however, that it was "highly irregular" for Kaput to sign the mortgage using "Tom," rather than "Thomas." Regarding the warranty deed, she opined that it was "highly probable" that Kaput signed it, but she could not provide a definite conclusion of identity without the original documents. The court found that she did not adequately address the differences between the challenged signature on the deed and Kaput's known signatures by, for example, measuring the differences in the angle of the slants and the size of the letters. The court found that Urbanski's opinions were not persuasive.

¶ 30    The court ruled that Kaput was entitled to a judicial deed placing the property in his name because he was the only shareholder of Elite, which was dissolved in 2011. The court found that Melissa and Murad's recent formation of EFI and Elite was "merely the sequel to their fraudulent

deed and mortgage relating to [the Property], intended to unnecessarily prolong this litigation." The court entered judgment in favor of Kaput and against Melissa on his claims to quiet title, for a declaratory judgment, trespass to chattel, and slander of title. The court dismissed Kaput's claim for a business accounting. The court declared Kaput the rightful owner of the Property and entitled to a judicial deed placing the Property in his name free and clear of any liens. The court declared that the May 2008 warranty deed, the January 2007 mortgage on the Property in favor of Murad, and the assignment of the note and mortgage recorded in June 2018 and signed by Murad were fraudulent and therefore void. The court awarded Kaput $15,000 in compensatory damages against Melissa for trespass to chattel, representing the amount she had collected by renting the Property to a parking vendor. For slander of title, the court awarded Kaput $175,000 in punitive damages, inclusive of attorney fees, against Melissa, based on the circumstances of this case and 50% of the 2008 fair market value of the property. The court previously awarded Kaput $1667 against Melissa for discovery sanctions in March 2019. The court also ordered the clerk to send a copy of this judgment to the Illinois Attorney Registration and Disciplinary Commission based on the court's determination that Spivack's notarization was false.

¶ 31 On May 7, 2019, Melissa filed an emergency motion to vacate the May 3, 2019 judgment, and the trial court denied her motion on May 8, 2019. On May 9, 2019, the court issued the judicial deed to the Property.

¶ 32 On June 3, 2019, Melissa appealed the trial court's (1) May 3, 2019 final judgment in favor of Kaput, (2) May 8, 2019 order denying her posttrial motion, and (3) execution and delivery of the May 9, 2019 judicial deed to the Property "and all other orders ancillary thereto."

¶ 33                                    II. ANALYSIS

¶ 34     On appeal, Melissa argues that the trial court erroneously (1) allowed the filing of an amended third-party complaint against her on the eve of trial, (2) denied her motion for judgment on the pleadings, (3) denied her motion to bar Baggett's expert witness testimony, (4) refused to admit into evidence the letter of direction from Murad to the title company, and (5) awarded punitive damages against her.

¶ 35                              A. Amended Complaint

¶ 36     Melissa argues the trial court abused its discretion by granting Kaput and Elite leave to file an amended third-party complaint on the eve of trial because the amended pleading was a wholesale reconstitution of the original pleading, adding new claims, theories and issues. She contends she suffered prejudice and did not have time to prepare to address the new claims for trespass to chattel and slander of title. She adds that the amendments were not timely and Kaput and Elite had previous opportunities to amend its pleading.

¶ 37     A trial court has broad discretion to grant or deny a motion to amend pleadings prior to the entry of a final judgment, and a reviewing court will not reverse the trial court's ruling on a motion to amend unless the trial court has abused its discretion, which occurs when a ruling is arbitrary, fanciful or unreasonable, or when no reasonable person would take the same view. *Abramson v. Marderosian*, 2018 IL App (1st) 180081, ¶ 30; *Palacios v. Mlot*, 2013 IL App (1st) 121416, ¶ 18. It is an abuse of discretion for the trial court to deny amendment of the pleadings to conform to the evidence adduced in the case. *Village of Wadsworth v. Kerton*, 311 Ill. App. 3d 829, 842-43 (2000); *Castro v. Belluci*, 338 Ill. App. 3d 386, 391 (2003). Court's review four factors in determining whether the trial court abused its discretion: "(1) whether the proposed amendment

would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).

¶ 38    Kaput and Elite filed their third-party complaint against Melissa in July 2013, and sought to amend that pleading in February, March and April of 2019. After extensive briefing and oral argument, the trial court, on April 15, 2019, granted Kaput and Elite leave to file the amended pleading that had been proposed since March 12, 2019. The bench trial began on April 16, 2019.

¶ 39    The parties agree that the amended third-party complaint cured the defect in the prior pleading that attached an exhibit of a trustee deed of a different parcel of real estate than the Property at issue here. The amendment also cured a scrivener's error in the original pleading that listed the wrong trial court case number.

¶ 40    Regarding the factor of prejudice or surprise, Melissa contends the amended pleading unfairly raised for the first time (1) the payment of property taxes, (2) prior judgments entered against Murad, (3) whether he and Melissa were married when the 2008 warranty deed was signed, (4) the mortgage recorded concurrently with the 2007 trustee's deed, (5) Spivack's notary surety finding him guilty of misconduct, and (6) new claims for trespass and slander of title that sought compensatory damages.

¶ 41    According to the record, the amended third-party complaint alleged that Melissa never paid taxes on the Property, she fraudulently claimed to have paid those taxes in 2011, and her documentation to support that false claim of payment was a fraud. The amendments also alleged that in 2019 Murad paid a portion of the tax to bolster his fraudulent claim of ownership of the

Property. Our review of the record establishes that the issue of property taxes was not new when the amended third-party complaint was filed and was expected at trial. In a March 31, 2015 pleading, Melissa admitted that she relied on Spivack to pay the property taxes on the Property. Furthermore, Melissa's nonpayment of property taxes and false claims of payment were briefed extensively in April 2018 in connection with her motion for summary judgment. She also described herself, prior to the filing of the amended complaint, as a trial witness on the topic of property taxes.

¶ 42 Miden's initial complaint in this case in 2009 arose out of Miden's unpaid judgment against Murad, and his failure to pay judgments entered against him in Illinois courts was raised in multiple pleadings before the challenged amendment. Furthermore, Miden's amended complaint in 2009 alleged that Melissa and Murad had a relationship and subsequently got married. The evidence that the 2007 mortgage and trustee's deed were filed concurrently was not new and those documents were exhibits to Miden's 2009 amended complaint. In addition, allegations that Spivack participated in the forgery of the 2008 warranty deed were part of Kaput and Elite's 2010 proposed crossclaim against Murad and Melissa. Also, Spivack admitted in his 2012 deposition that he notarized Kaput's purported signature on the 2008 warranty deed without Kaput being present.

¶ 43 The trespass to chattel and slander of title counts added in Kaput and Elite's amended third-party complaint arose out of the same occurrence and transactions that formed the basis for their prior 2013 pleading. Furthermore, these counts were not a surprise raised on the eve of the April 16, 2019 trial but, rather, were identical to the counts in their proposed amended complaint that was filed with the motion to amend on March 22, 2019. In their motion to amend, they explained

they recently learned that Melissa was renting the Property to a valet parking service, which was the basis for the trespass to chattel count. The basis of the slander of title count was the 2008 warranty deed, which has been an exhibit in this case since 2009 when Miden filed its amended complaint, which named Melissa as a defendant. The scheme regarding the false mortgage between Murad and Kaput was described in Elite's June 20, 2018 combined motion for turnover of property by judicial deed, an order to quite title, and Rule 137 sanctions. The trespass and slander counts were properly added to the amended complaint and contained no surprise or prejudice to Melissa because the underlying facts and the counts themselves had been previously disclosed to Melissa.

¶ 44 The extensive record in this case establishes that a flurry of motions involving discovery disputes, jurisdiction and other myriad issues were filed, briefed, argued and adjudicated in the months and weeks leading up to the trial. Under the circumstances of this case, we do not find that the factors concerning timeliness or prior amendment attempts weigh against the filing of the amended third-party complaint. Consequently, we conclude that the trial court did not abuse its discretion by allowing the amended third-party complaint to be filed.

¶ 45                           B. Motion for Judgment on the Pleadings

¶ 46 Melissa argues that the trial court erred by denying her motion for a judgment on the pleadings because Elite was involuntarily dissolved by the Illinois Secretary of State on August 12, 2001, for failure to pay franchise taxes, and section 15.85(c) of the Illinois Business Corporation Act (Act) (805 ILCS 5/15.85(c) (West 2018)) provides that "[n]o corporation required to pay a franchise tax, license fee, penalty, or interest under this Act shall maintain any civil action until all such franchise taxes, license fees, penalties, and interest have been paid in full." Melissa argues that Kaput did an end run around section 15.85(c) of the Act by seeking in the amended

third-party complaint rejoinder of Kaput, individually, on the grounds that as the surviving sole shareholder, he was entitled to the assets of the dissolved corporation. Also, Melissa contends that no evidence was offered to show that the dissolved corporation's claims were assigned to Kaput as part of any orderly winding up of the corporation's affairs.

¶ 47   The standard of review for judgment on the pleadings is *de novo*. *West American Insurance Company v. Midwest Open MRI, Inc.*, 2013 IL App (1st), 121034, ¶ 19. *De novo* consideration means the appellate court performs the same analysis that a trial judge would perform. *Thomas v. Weatherguard Construction Company*, 2015 IL App (1st) 142785, ¶ 63.

¶ 48   Melissa never asserted an affirmative defense of lack of standing pursuant to section 15.85 of the Act until her appellate brief. According to the record, her motion for judgment on the pleadings rested entirely on the argument that the scrivener errors in the 2013 third-party complaint, which consisted of the wrong case number and the wrong warranty deed attached as an exhibit, mandated dismissal of Kaput and Elite's suit against her. The trial court denied her motion, finding that there was no genuine issue of material fact regarding the correct case number and correct address of the Property. We conclude that Melissa has forfeited the issue of standing asserted in her appellate brief. *Grimes v. Sage Telecom Communications, LLC*, 2018 IL App (1st) 171455, ¶ 23 (where "aspects of the arguments defendants raised on appeal were distinct from the ones they raised in the trial court, their appellate contentions were forfeited").

¶ 49                    C. Expert Testimony

¶ 50   Melissa argues the trial court abused its discretion by denying her motion *in limine* to bar the testimony of Elite's expert witness, Curt Baggett, for failure to make timely disclosures under Illinois Supreme Court Rule 213(f) (eff. Jan. 1, 2018). Although the trial court excluded from the

trial exhibit D, which was a series of the charts and scans of the various measurements Baggett took of the signatures provided by Kaput and Elite, Melissa complains that the court allowed Baggett to testify to the specific information contained in the excluded exhibit regarding the methods or techniques he used to compare the signatures in the documents, the significant difference he found based upon his review, and how he reached his conclusions that Kaput's purported signatures on the 2008 warranty deed were forged.

¶ 51    The bystander's report in the record shows that Melissa objected to Elite's exhibit D, which resulted in that exhibit being excluded from trial. No further objections to Baggett's testimony by Melissa were recorded in the bystander's report. "A motion *in limine* is an interlocutory order and remains subject to reconsideration by the court throughout the trial." *Reid v. Sledge*, 224 Ill. App. 3d 817, 822 (1992). "It is within the discretion of the trial judge to grant or deny the motion." *Konieczny v. Kamin Builders, Inc.*, 304 Ill. App. 3d 131, 136 (1999). "Even though denied, the movant must nevertheless object to the evidence in question and failure to do so will result in the issue being [forfeited]." *Reid*, 224 Ill. App. 3d at 822. We conclude that Melissa forfeited appeal of this issue by failing to object to Baggett's testimony during the trial.

¶ 52                          D. Admission of Evidence

¶ 53    Melissa argues the trial court erred by sustaining Elite's objection to the admission into evidence of Murad's December 20, 2007 letter of direction to the title company because a vice president and legal counsel of the title company authenticated the letter, which the title company had used to prepare the 2007 trustee's deed for the Property. This letter by Murad authorized and directed the title company, as the trustee holding title under a land trust, to convey the Property and an additional lot to the grantee. Originally, the name of the grantee was typed "Elite Financial

Investments, Inc.," but then the word "Investments" was crossed out. The grantee's address was typed as "1914-16 West Division Street, Chicago, Illinois," which was Elite's address.

¶ 54    Melissa contends this letter was essential to show Murad's intent to convey the Property to EFI and not Elite and that the listing of EFI on the 2007 trustee's deed was not a scrivener's error. Melissa argues that the letter was an authenticated record maintained by the title company in its official file and fell within the business record exception to the hearsay rule. Melissa argues that this letter would have supported her testimony that the title to the Property was intentionally deeded to a fictious entity to shelter the Property from adverse claims while Kaput tried to raise the money to buy into the deal where he and Murad would jointly develop the Property.

¶ 55    We review the trial court's ruling to exclude evidence for an abuse of discretion. *Hoffman v. Northeast Illinois Regional Commuter R.R. Corp.*, 2017 IL App (1st) 170537, ¶ 49. The letter was purportedly signed by Murad but he did not testify at the trial, and the attorney of the title company testified that he did not know what the handwritten marks on the letter meant. Without Murad, no one could authenticate or explain the handwritten markings on the letter. See *Laughlin v. Chenowith*, 92 Ill App. 3d 430, 435 (1980) (court properly excluded a document signed by a nonparty when its contents could not be authenticated). We find no abuse of discretion by the trial court on this issue.

¶ 56                                E. Punitive Damages

¶ 57    Melissa argues the trial court erred by awarding Kaput $175,000 in punitive damages because punitive damages were not sought in Kaput and Elite's 2010 cross-claim or 2013 third-party complaint, neither of which sought any monetary damages. Melissa argues that Elite's first request for punitive damages, which according to the record was contained in its proposed

amended third-party complaint in February 2019, was merely part of the prayer for relief in the slander of title count, in which no other monetary damages were alleged or requested. She contends the request did not specifically plead a claim for punitive damages because it gave no particulars regarding either the amount of punitive damages that would be requested or the basis for that relief. Melissa also contends no evidence was presented at the trial regarding the amount of punitive damages to be awarded.

¶ 58 Melissa has forfeited this issue by failing to raise it in her posttrial motion. See *Denton v. Universal Am-Can, Ltd.*, 2019 IL App (1st) 181525, ¶ 46. A posttrial motion must set forth the specific grounds for any alleged error and where the parties fail to raise an issue in their motion for posttrial relief, that issue is forfeited on appeal. *Id*.

¶ 59 Forfeiture aside, generally, punitive damages are awarded when the underlying tort is accompanied by aggravating circumstances such as willful, wanton, malicious, or oppressive conduct. *In re Estate of Hoellen,* 367 Ill. App. 3d 240, 253 (2006). Punitive damages may only be awarded for conduct that is outrageous either because the defendant's motive was evil or the acts exhibited a reckless indifference toward the rights of others. *Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 415-16 (1990). The purpose of awarding punitive damages is to punish the wrongdoer and, in doing so, to deter that party and others from committing similar wrongful acts. *Totz v. Continental Du page Acura*, 236 Ill. App. 3d 891, 909 (1992). Punitive damages are not favored in the law; thus, courts should be careful never to award such damages improperly or unwisely. *Kleidon v. Rizza Chevrolet, Inc.*, 173 Ill. App. 3d 116, 121 (1988). In reviewing a decision on punitive damages, an appellate court must not disturb the trial court's decision to award punitive damages unless the trial court abused its discretion. *Gambino v. Boulevard*

*Mortgage Corp.*, 398 Ill. App. 3d 21, 69 (2009); *Kleczek v. Jorgensen,* 328 Ill. App. 3d 1012, 1024-25 (2002).

¶ 60    Illinois courts in common law cases have allowed punitive damages supported only by nominal damages when the conduct of the defendant is intentional. See, *e.g.*, *In re Estate of Hoellen*, 367 Ill. App. 3d 240, 252 (2006) (punitive damages can be awarded for intentional breach of fiduciary duty without an award of actual damages); *First National Bank of Des Plaines v. Amco Engineering Co.*, 32 Ill. App. 3d 451, 455 (1975) (remanding for award of nominal damages for trespass to property and allowing plaintiffs to amend complaint to seek punitive damages), *superseded by statute on other grounds as recognized by Wujcik v. Gallagher & Henry Contractors,* 232 Ill. App. 3d 323, 328 (1992). Where the defendant is aware from the nature of the complaint that plaintiffs intended to prove willful misconduct, an amendment of the complaint to include a prayer for punitive damages should be allowed since defendant would not be prejudiced thereby. *First National Bank of Des Plaines*, 32 Ill. App. 3d at 455.

¶ 61    As discussed in detail above, we concluded that the trial court did not abuse its discretion by allowing Elite's amendment to add the slander of title count. We also conclude that the request for punitive damages in the prayer for relief for that count was not a surprise to Melissa. The claims against her alleged that she engaged in intentional misconduct and participated in the forgery of the May 2008 warranty deed for the Property, thereby putting her on notice that she might be liable for punitive damages. See *Public Taxi Service, Inc. v. Barrett*, 44 Ill. App. 3d 452, 459 (1976).

¶ 62    The amount of punitive damages rests within the discretion of the trial court (*Franz v. Calaco Development Corp*, 352 Ill. App. 3d 1129, 1143 (2004)), and "it is well-established that [punitive] damages may be awarded absent any evidence of financial condition" (*Leyshon v. Diehl Controls of North America, Inc.*, 407 Ill. App. 3d 1, 16 (2010)). The trial court found that Melissa

participated in stealing the Property by means of forgery and deprived Kaput, the rightful owner of the Property, of the benefit of it for 12 years while Melissa rented it out to a parking valet for income. Furthermore, Kaput testified that he had spent over $150,000 litigating the recovery of the Property. The trial court explained that the punitive damages award represented half the value of the property, and we find no abuse of discretion in that decision. See *Gambino*, 398 Ill. App. 3d at 69 ("the amount of an award should be a reflection of the factfinder's determination as to the degree of maliciousness evidenced by a defendant's actions").

¶ 63    If Melissa had raised in her posttrial motion her claim that the May 3, 2019 judgment did not include nominal damages on the slander of title claim to support the punitive damages award, the trial court could have easily addressed the matter with a simple edit. Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), states that "in all appeals the reviewing court may, in its discretion, and on such terms as it deems just, enter any judgment and make any order that ought to have been given or made." Based on our authority under Rule 366(a)(5), we modify the trial court's May 3, 2019 judgment to reflect that nominal damages are awarded in favor of Thomas Kaput and against Melissa Sweiss on count V for slander of title in the amount of $1 and punitive damages, inclusive of attorney's fees, are awarded in favor of Thomas Kaput and against Melissa Sweiss on count V for slander of title in the amount of $174,999. In all other respects, we affirm the award rendered by the trial court.

¶ 64                                    F. Other Relief

¶ 65    Melissa also filed with this court a motion for sanctions under Supreme Court Rule 375(b) (eff. Feb. 1, 1994) and a motion to strike portions of Kaput and Elite's objections to her motion for sanctions, which this court ordered would be taken with the case. Melissa argues that Kaput and Elite's June 2019 motion to dismiss her appeal was frivolous and Kaput's affidavit in support

of that motion falsely claimed that he sold the Property to a bona fide purchaser and thereby rendered Melissa's appeal moot. She requests that an order be entered directing Kaput and his counsel to pay her $2130 in attorney fees. She also argues that Kaput and Elite devoted the vast majority of their objection to her motion for sanctions to yet another lengthy recitation of the alleged sordid history of the case and asks this court to strike certain portions that she contends are irrelevant. In July 2019, this court denied without prejudice Kaput and Elite's motion to dismiss this appeal; however, that denial does not mean that their motion was frivolous or that Kaput's affidavit in support of his motion was false. Based on our review of this case on the merits, we deny Melissa's motion for sanctions and motion to strike.

¶ 66    Finally, Kaput and Elite ask this court, pursuant to Supreme Court Rule 366, to enter an order barring Melissa or any of her legal representatives or agents from filing any other litigation, claims or actions against Kaput and Elite with respect to the Property, and from filing or recording any further documents or encumbrances against the Property. Kaput and Elite also ask this court to direct Melissa and her legal counsel to withdraw or record a release of any and all documents or other encumbrances they have recorded against the Property and to refrain from filing or recording any further document or encumbrance against it.

¶ 67    This request seems to ask this court to grant relief based on speculation about Melissa's possible future actions. Kaput and Elite cite no relevant authority showing a basis for us to grant this relief and we decline to do so.

¶ 68                                    III. CONCLUSION

¶ 69    For the foregoing reasons, we affirm the judgment of the circuit court except for the modification concerning damages to award Kaput $1 in nominal damages and $174,999 in punitive damages against Melissa on count V for slander of title.

¶ 70    Affirmed as modified.